UNITED STATES, Appellee,

v.

Brian S. BARTON, Airman, U. S. Air Force, Appellant.

No. 38,215.
ACM S24736.

U. S. Court of Military Appeals.

June 29, 1981.

For Appellant: *Major Wade B. Morrison* (argued); *Colonel Larry G. Stephens, Captain Robert P. Hailey* (on brief).

For Appellee: *Captain Richard O. Ely, II* (argued); *Colonel James P. Porter, Captain James R. Van Orsdol, Captain William O. Ashcraft* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

On March 8, 1979, appellant was tried by a special court-martial with members. The charges against him alleged that on November 30, 1978, he had wrongfully possessed 7.5 ounces of marihuana and 50 tablets of lysergic acid diethylamide (LSD).[1] Upon the findings of guilty on these two charges,

1. Wrongful possession of the marihuana was charged under Article 134 of the Uniform Code, 10 U.S.C. § 934. In wrongfully possessing the LSD, appellant was alleged to have violated an Air Force Regulation, for which he was punishable under Article 92 of the Code, 10 U.S.C. § 892.

Barton was sentenced to a bad-conduct discharge, confinement at hard labor and partial forfeitures for 6 months, and reduction to the grade of Airman Basic.

Both the convening authority and the supervisory authority approved the findings and sentence; in turn, the United States Air Force Court of Military Review affirmed. We granted review to determine whether information provided the officer who authorized the search "was insufficient to establish probable cause to search appellant's room." 8 M.J. 221 (1980).

### I

On November 30, 1978, Lieutenant Colonel Donald S. Croston, who was acting as Base Commander of K. I. Sawyer, Air Force Base, Michigan, was contacted by agents of the Air Force Office of Special Investigations (OSI). They requested that he authorize a search of appellant's room and, to support the request, provided relevant information which he promptly recorded in a memorandum. Finding probable cause, Croston authorized a search of the room for marihuana, narcotics, dangerous drugs and associated paraphernalia.

The information in the memorandum was:[2]

a. On 30 Nov 1978, an AFOSI Contact, who has provided reliable information in the past, advised that BRIAN BARTON, Amn, 410th Supply Squadron, who resides in Room 115, Barracks 835, K. I. Sawyer, AFB, MI, was in possession of a pound of marihuana and a quantity of "orange mesk". BARTON was offering the marihuana for sale at $40.00 per ounce and the "orange mesk" at $2.00 per unit. Contact did not observe any drugs at this time.

b. On 30 Nov 78, a second AFOSI Contact, who has provided information of an unknown reliability in the past, advised he observed BARTON in possession of a pound of marihuana and an unknown quantity of orange and blue mescaline tablets the previous night. The marihuana was stored in a paper "Shopko" bag in BARTON's personal locker and the mescaline tablets were in small glass vials stored in a tan colored coin box in BARTON's locker. On 30 Nov 78, this contact again advised that BARTON was presently in possession of the marihuana and mescaline tablets, and was in his (BARTON's) room (Rm 115, BKS 835) in the process of dividing up the marihuana into one ounce bags for sale.

At an Article 39(a), 10 U.S.C. § 839(a) hearing on the motion to suppress, Lieutenant Colonel Croston testified that the memorandum was accurate although it may not have recorded all the information that was provided him. After he testified, there was extensive argument by counsel; and, in turn, the military judge entered "a specific finding that there was probable cause on which to justify the authorization to search."

In his review the staff judge advocate discussed the issue of probable cause in great detail.[3] In his *Goode*[4] response defense counsel objected to the review's conclusion that the search and seizure were legal; and an addendum by the staff judge advocate responded to this objection.

### II

■ The basic issue here concerns the application of the two-pronged test announced by *Aguilar v. Texas*, 378 U.S. 108,

---

2. The memorandum itself was not offered into evidence as an exhibit and the quotation is from the brief which defense counsel submitted in support of his objection to receipt in evidence of the contraband seized during the search of Barton's room. However, by a question asked on cross-examination, it was established that the first paragraph quoted above appeared verbatim in Lieutenant Colonel Croston's memorandum. Other portions of Croston's testimony make it clear that the second

paragraph quoted was also contained verbatim in the memorandum.

3. Appellate government counsel adopted the Staff Judge Advocate's discussion of this case for their argument in the brief filed in our Court.

4. *United States v. Goode*, 1 M.J. 3 (C.M.A. 1975).

84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), for determining whether an informant has established probable cause. That test requires that the informer be credible and trustworthy, as well as that he had an opportunity to obtain accurate information. In short, a report from an informer—no matter how honest he may be—does not establish probable cause if he had no opportunity to learn firsthand the facts which he relates, for he may only be disseminating gossip. Likewise, no matter how ample the opportunity for an informer to learn the true facts, the information he provides is valueless if he is not trustworthy, this trustworthiness usually being demonstrated by the accuracy of information he has provided on past occasions.[5]

The problem of credibility of informers is especially serious in narcotics cases, since, as the Air Force Court of Military Review has pointed out:

> Informers, paid or unpaid, are commonly encountered in narcotics investigations. Such individuals, of course, are usually deeply involved in the very criminal activity the police are investigating. Ofttimes, they have long criminal records involving drug addiction, perversion, thievery and the like. The law has long recognized that information supplied by such individuals would not ordinarily be believed by a reasonable and prudent person, unless there be some independent basis for crediting it.

*United States v. Keeve*, 2 M.J. 290, 293 (A.F.C.M.R.1976).

■ However, having given due consideration to such caveats, we have concluded that here probable cause was established, even though neither the information from informant A—who had provided reliable information in the past—nor informant B—who was "of an unknown reliability in the past" but who furnished very detailed information on November 30, 1978—would have sufficed by itself to establish probable cause. Informant A may not even meet the requirement of reliability in the absence of an explanation in greater detail of his reliability in the past.[6] In any event, there is no recital of his means for knowing that Barton was in possession of marihuana and mescaline. Although the wording of the memorandum may suggest that Informant A had seen appellant offering the marihuana and the mescaline for sale but had not observed the drugs, the cross-examination of Lieutenant Colonel Croston at trial placed this interpretation in question.

Informant B reported on November 30 that he had observed Barton in possession of a pound of marihuana and some orange mescaline on the previous night. Then he "again advised" the OSI that appellant "was presently in possession of the marihuana and mescaline tablets, and was in his . . . room . . . in the process of dividing up the marihuana into one ounce bags for sale." The specificity of this report tended to suggest that it was reliable and that Informant B actually had an opportunity to observe appellant. His description of the process then underway of dividing up the marihuana tends to negate the possibility that Informant B was simply reciting what he had heard from someone else at an earlier time.

The decisive point, however, is that, since the report from Informant A matches so closely some of the details provided by Informant B, it tends to establish the reliability of Informant B's report. Both infor-

---

**5.** As we noted in *United States v. Gamboa*, 23 U.S.C.M.A. 83, 85, 48 C.M.R. 591, 593 (1974):

> Personal observation is certainly an efficient means of satisfaction of the requirement of *Aguilar v. Texas*, 378 U.S. 108 [84 S.Ct. 1509, 12 L.Ed.2d 723] (1964), that an affidavit must contain some of the underlying circumstances from which the informant concludes that the contraband is where he claims it is. On the other hand, although the officer who authorized the search was told that informant's information was the product of his personal observation, that disclosure by itself fails to satisfy the other *Aguilar* requirement that the informant must be shown to be credible or his information reliable.

**6.** *Cf. Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). *But see United States v. Cole*, 628 F.2d 897, 898 n.1 (5th Cir. 1980), and *United States v. Morill*, 490 F.Supp. 477, 479 (S.D.N.Y.1980).

mants referred to a pound of marihuana and to orange mescaline. This interlocking of details in the two accounts substantially reduces the likelihood that each informer was simply purveying unreliable gossip.

In an oft-quoted passage the Supreme Court has stated that:

> [i]n dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

*Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).

In *United States v. Draper*, 358 U.S. 307, 313, 79 S.Ct. 329, 336, 3 L.Ed.2d 327 (1959), the Court, in dealing with an arrest, explained:

> Probable cause exists where "the facts and circumstances within . . . [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.

When viewed in the perspective of the Supreme Court's explications, of "probable cause," we can only conclude that the information here conveyed to the acting base commander by the OSI and recorded promptly by him was sufficient to uphold his finding of probable cause.

### III

The decision of the United States Air Force Court of Military Review is affirmed.

Judge COOK concurs.

FLETCHER, Judge (dissenting):

I must dissent. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), requires that an informant have the reliability of means of acquiring information and his credibility must be shown. If we express Chief Judge Everett's opinion using algebraic license it would be as follows:

$$
\begin{aligned}
\text{Informant A} &= A \\
\text{Informant B} &= B \\
\text{Reliability} &= R \\
\text{Credibility} &= C \\
A &= (R-C) \\
B &= (C-R) \\
(R-C) + (C-R) &= 0 \\
\text{Thus} \quad A + B &= 0
\end{aligned}
$$

There are in the law as well as mathematics several immutable rules. The test in *Aguilar v. Texas, supra,* is one of these rules. Where the legal test requires reliability and credibility in the same informant, two informants each possessing only one of the elements of a two-prong test together do not meet the test—they equal zero.

Mathematics and the law both find their basis in reason and logic.

I would reverse the United States Air Force Court of Military Review.

which were subsequently dishonored, although omission of notice that certain checks were not paid on presentment was substantial, rendering record incomplete, lack of completeness related to some, not all charges and specifications against accused, and, therefore, Court of Military Review was free to set aside tainted findings of guilt on specifications to which prosecution exhibit was relevant and then reassess sentence on basis of remaining findings. UCMJ, Arts. 19, 123a, 134, 10 U.S.C.A. §§ 819, 923a, 934.