**UNITED STATES, Appellee,**

v.

**Francisco B. OCHOA, Specialist Four U. S. Army, Appellant.**

**No. 39,610.**
**SPCM 14333.**

U. S. Court of Military Appeals.

Jan. 18, 1982.

For Appellant: *Colonel Edward·S. Adamkewicz, Jr., Lieutenant Colonel John F.*

*Lymburner, Major Robert D. Ganstine, Captain Joseph A. Russelburg* (on brief); *Major Lawrence D. Galehouse.*

For Appellee: *Colonel R. R. Boller, Major Douglas P. Franklin, Major Robert B. Williams, Captain Lawrence W. Fitting* (on brief); *Major Ted B. Borek.*

*Opinion of the Court*

EVERETT, Chief Judge:

During July 1979, at Fuerth, Federal Republic of Germany, appellant was tried by a special court-martial military judge sitting alone. Contrary to his pleas, Ochoa was found guilty of possession of lysergic acid diethylamide (LSD), in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. His sentence included a bad-conduct discharge, confinement at hard labor for 3 months, forfeiture of $279.00 pay per month for 3 months, and reduction to E–1. After appellant's conviction was upheld by all intermediate reviewing authorities, we granted review of this single issue (10 M.J. 88):

> WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY ADMITTING THE FRUITS OF A SEARCH INCIDENT TO THE APPELLANT'S APPREHENSION, WHEN THE COMMANDER WHO AUTHORIZED THE APPREHENSION AND CONDUCTED THE SEARCH HAD NOT BEEN ADVISED AND DID NOT HAVE PERSONAL KNOWLEDGE OF A FACTUAL BASIS FOR THE INFORMANT'S ALLEGATION THAT THE APPELLANT WRONGFULLY POSSESSED DRUGS.

I

During Ochoa's court-martial, defense counsel unsuccessfully moved to suppress the 23 LSD tablets (pros. ex. 2) that Captain Maddox, appellant's company commander, had seized from Ochoa's wallet on May 1, 1979. The defense claimed that

Ochoa had been illegally apprehended and searched, since the two-pronged test of *Aguilar v. Texas*,[1] 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), had not been met—for neither the reliability of the informant nor "the underlying circumstances from which the informant concluded that" (*id.* at 114, 84 S.Ct. at 1513, 1514) Ochoa was in possession of LSD had been established. Appellant specifically complained that merely because Captain Maddox "had received information that LSD and other drugs had been in the area ... [was] insufficient for him to form a foundation and to consider it probable cause." Further, the defense contended that Captain Maddox relied solely on "a rumor which amounted to triple hearsay, none of which was investigated to establish if that foundation or knowledge existed."

We agree that Captain Maddox lacked probable cause to apprehend the appellant;[2] so the search of his wallet, which resulted in the discovery and seizure of the LSD tablets was also illegal. However, we shall consider only that part of the *Aguilar* test which requires that "the ... [commander] must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were."[3] 378 U.S. at 114, 84 S.Ct. at 1513, 1514.

As a result of information furnished him, appellant's first sergeant, Larry Milburn, apprehended Specialist Parks, another member of appellant's company, who "was in possession with four hits of alleged LSD." Upon questioning, Parks admitted that he had obtained the drugs from Newman, a member of another company. According to Milburn, Parks "told me that

Newman had given him the LSD and told him to sell it for $7.00 a hit and he stated that Newman had stated that he was going to give some to Ochoa." Also, Parks had said that "Ochoa and three other individuals in the unit had some and one of them he had sold one hit to." Parks' statement to Milburn was made around 3:40 or 4:00 p. m.; his transaction with Newman had occurred at 9:30 a. m. In Milburn's opinion, Parks was "very truthful." However, he had not previously provided information on drug offenses which led to the apprehension of persons dealing with drugs. Milburn considered Newman to be "[a] very poor soldier."

Immediately after hearing Parks' statement, First Sergeant Milburn informed "Captain Maddox that we had found Parks in possession of three tablets and that Parks had stated that these other four individuals had it and to the best of his knowledge they had it in their possession at that time." He did not recall telling Captain Maddox anything else. Thereupon "Captain Maddox instructed me at that time to go find or get four NCO's and send one NCO to each one of the four individuals named and have him escorted down and have them brought into separate rooms downstairs." Maddox also instructed First Sergeant Milburn that when they brought the men back "downstairs," "don't leave them alone until we would search them and find out." "Ochoa was one of the four that was found and taken downstairs."

Captain Maddox, testifying as a government witness, confirmed that he had seen "First Sergeant Milburn in the afternoon of 1 May," when they discussed Ochoa. Mil-

1. For a recent recapitulation of the two-pronged test, *see United States v. Barton*, 11 M.J. 230, 232 (C.M.A.1981).

2. As this Court observed in *United States v. Wallace*, 11 M.J. 445, 446 n.2 (1981):
    The "apprehension" of a person in the military must be "upon reasonable belief that an offense has been committed and that the person apprehended committed it." Article 7(a), (b), Uniform Code of Military Justice, 10 U.S.C. § 807(a), (b). The requirement that there be "reasonable grounds to believe that

the person to be arrested has committed a felony" is generally expressed by the phrase "probable cause." *United States v. Watson*, 423 U.S. 411, 417, 96 S.Ct. 820, 824, 46 L.Ed.2d 598 (1976); *United States v. Paige*, 7 M.J. 480, 484 (C.M.A.1979).

3. Although the Court granted only this issue for review, appellant also has argued in his brief that the informant "*was not shown to be a credible person or a reliable source of information.*"

burn's information about appellant had "surprised" the captain. However, he immediately had "an NCO go out and get Ochoa and bring him into the office." Thereupon, "I placed him under apprehension," informed him of his rights, and "told . . . [Ochoa] to empty his pockets." After appellant had complied, Captain Maddox searched his wallet and found a piece of tape like material about this long [eighteen inches] that had 23 tablets in it. However, no LSD was found on the other three individuals whom Specialist Parks had identified.

Captain Maddox was "positive" "that Parks was not brought to [him] prior to the search of Ochoa" and that he "did not talk to Parks prior to the search." On a later date he accosted Parks concerning "the source of this LSD" and learned from him—not from Sergeant Milburn—that the source was Newman.[4] Thus, at the time Ochoa was apprehended, Maddox "didn't know how Parks came to have an idea about Ochoa having LSD." Furthermore, he conceded that First Sergeant Milburn "did not give me the information as to how he knew it."

According to Captain Maddox, he previously had talked to Parks about providing information concerning drug use in the unit; but he had never received any information from Parks which led to the conviction of anyone.

Captain Maddox felt that he was "placing Ochoa under apprehension or arrest at the time" he had appellant brought to his office. In this connection he testified:

Q. But based upon the information that you had at the time that you read him his rights you were not willing to take him into custody yourself or apprehend him at that time? You desired to search him first to confirm that fact?

A. That's correct.

\* \* \* \* \* \*

A. At the time that I brought him in there I had full belief, I believed without, well, in my own opinion, that he had the LSD on him.

Q. So the purpose was, as the Judge asked, to search and then decide to apprehend or when he came in there were you apprehending him and just reading him his rights.

A. Well, when I brought him in there I had the intention of searching him and finding the LSD and putting him under apprehension at that time. That's what I had intentions of doing.

Q. You were not going to apprehend him until after you searched him?

A. Correct.

When he "heard from the First Sergeant about Ochoa and about Parks being found to be in possession," Captain Maddox still was not "aware . . . that Newman was the source." On recross-examination, Maddox testified:

Q. Well, what I am saying is that the First Sergeant was not able to give you any information as to how Parks knew Ochoa had drugs?

A. No, he did not give me that information.

Q. Okay, did you inquire of him?

A. No, I didn't.

## II

■ The foregoing review of the crucial evidence in this case makes it clear that Captain Maddox was not informed of the "underlying circumstances" upon which Parks had based his conclusion that Ochoa possessed LSD. Even the captain himself admitted unequivocally that "I did not know it at that time [before Ochoa was apprehended and searched] as to how he [Parks] knew" that Ochoa had LSD, and

---

4. Maddox further testified that, even though Newman was in Charlie Company and was not in his battery, he only knew Newman because he had "been involved in several drug related offenses." "Newman has the reputation of dealing drugs in the battalion." Also, he had "seen him around."

**284**

that First Sergeant Milburn "did not give me the information as to how he knew it." Since Maddox was the official on whose authority the search was conducted, his lack of more specific information renders the search and seizure invalid.

The granted issue speaks in terms of a search incident to apprehension. Actually, as some of the quoted testimony reveals, Maddox may well have been ordering a search of appellant with a view to obtaining evidence that would justify apprehension, rather than conducting a search incident to apprehension. Certainly, he had no specific information which would have led him to believe that appellant would have any drugs on his person at the time that he appeared in the captain's office. Of course, to search or apprehend without probable cause in the hope of obtaining information that will justify apprehension is condemned by the Fourth Amendment. *Cf. Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *United States v. Brown*, 10 U.S.C. M.A. 482, 488, 28 C.M.R. 48, 54 (1959).

If the search is viewed as being incident to apprehension, it is still invalid. The only information that Captain Maddox possessed was that Parks, a member of his company, had been found shortly before with LSD on his person and that he had said that Ochoa and three others also had LSD. However, this information does not amount to probable cause, since,

> [f]or all that appears, the source here merely suspected, believed or concluded that there were narcotics in [those individuals'] possession. The [commander] here certainly could not "judge for himself the persuasiveness of the facts relied on ... to show probable cause." He necessarily accepted "without question" the informant's "suspicion," "belief" or "mere conclusion."

*Aguilar v. Texas, supra* 378 U.S. at 113–14, 84 S.Ct. at 1513, 1514 (footnote omitted). Even if Parks were especially reliable and if his reliability were viewed as strengthened by the circumstance that he was making declarations against his penal interest,[5] it still would be necessary to demonstrate how he knew, or might have known, that Ochoa possessed the LSD.

The military judge made numerous findings of fact from which he concluded as a matter of law that appellant's "apprehension ... was based upon probable cause to believe the offense of possession of LSD was committed or was being committed and the accused was the perpetrator." Concerning "the basis of knowledge" test under *Aguilar*, he concluded:

> Parks' active involvement in the same criminal activity in the same unit gave Parks the special ability to know the matters he related. Such information is not so readily known or discoverable by persons not so criminally involved. Parks' own possession of identical drugs established his credentials to know what he was talking about.

■ However, to repeat here what was recently recognized in *United States v. Barton*, 11 M.J. 230, 232 (C.M.A.1981) (emphasis added):

> Informers, paid or unpaid, are commonly encountered in narcotics investigations. Such individuals, of course, are usually deeply involved in the very criminal activity the police are investigating. Ofttimes, they have long criminal records involving drug addiction, perversion, thievery and the like. The law has long recognized that information supplied by such individuals would not ordinarily be believed by a reasonable and prudent person, *unless there be some independent basis for crediting it.* (Quoting from *United States v. Keeve*, 2 M.J. 290, 293 (A.F.C.M.R.1976)).

5. However, in the bare form in which it was reported to Captain Maddox, Parks' statement that Ochoa and three others in the unit possessed LSD was not against his penal interest since it did not tend to establish any miscon-duct by Parks—such as a sale of drugs to these men or conspiracy with them. *Cf. United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).

When Captain Maddox ordered the apprehension, he had not been furnished an "independent basis for crediting" Parks' conclusion that Ochoa had LSD. A criminal's accusation that someone else has committed a similar crime does not automatically establish probable cause to apprehend or to search that other person; commission of crime does not in itself constitute a basis for identifying all others who have committed that same kind of crime. Even in such instances the informant must indicate some additional basis for his accusation—such as personal observation or admission by the suspect.

### III

Since the apprehension was illegal, it cannot validate the search. Apart from the apprehension, there was no basis for authorizing the search. Accordingly, the decision of the United States Army Court of Military Review is reversed. The findings of guilty and the sentence are set aside. The charge is dismissed.

Judges COOK and FLETCHER concur.