UNITED STATES

v.

Joseph FREEMAN, 067 62 0097 Private
(E–1), U.S. Marine Corps.

NMCM 88 0383.

U.S. Navy–Marine Corps Court of
Military Review.

Sentence Adjudged 3 Nov. 1987.

Decided 19 April 1989.

LCDR. Robert J. Smith, JAGC, USN, Appellate Defense Counsel.

Maj. R.P. Walton, USMC, Appellate Defense Counsel.

CDR. P.J. McLaughlin, JAGC, USN, Appellate Government Counsel.

Before BYRNE, COUGHLIN and RUBENS, JJ.

COUGHLIN, Senior Judge:

The appellant, a private in the Marine Corps, proceeded *pro se* at a general court-martial before a military judge alone. Contrary to his pleas, the appellant was convicted of one specification of aggravated assault by intentionally inflicting grievous bodily harm, one specification of aggravated assault with a dangerous weapon, one specification of assault consummated by a battery and two specifications of disrespect toward his superior noncommissioned officer, in violation of Articles 128 and 91, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 928 and 891. The military judge sentenced the appellant to the maximum allowable confinement of 9 years, total forfeiture of all pay and allowances and a dishonorable discharge. The convening authority approved the sentence as adjudged.

This case was submitted for our review without assignment of error. Following our initial examination of the record of trial, we ordered briefs on the following specified issues:

I

IS THERE A DIFFERENT STANDARD FOR DETERMINING COMPETENCE TO WAIVE COUNSEL AND PROCEED *PRO SE* THAN THERE IS FOR DETERMINING COMPETENCE TO STAND TRIAL?

II

ASSUMING COMPETENCY TO WAIVE COUNSEL AND PROCEED *PRO SE* REQUIRES A HIGHER STANDARD OF COMPETENCY, WAS THE APPROPRIATE STANDARD APPLIED TO THE APPELLANT IN VIEW OF THE NATURE OF THE R.C.M. 706 BOARD ORDERED ON 9 OCTOBER 1987 AND IN VIEW OF THAT BOARD'S FINDINGS DATED 30 OCTOBER 1987?

III

IF THE APPROPRIATE STANDARD OF COMPETENCY TO WAIVE COUNSEL AND PROCEED *PRO SE* WAS NOT APPLIED TO THE APPELLANT, WHAT ACTION SHOULD THE COURT NOW TAKE TO REMEDY THIS ERROR?

Upon review of the record of trial and the briefs submitted by counsel, we conclude with respect to the first two specified issues, as follows: I, a higher standard of competency is required in order for an accused to waive counsel than would be required to stand trial; and, II, this higher standard was not applied to the appellant. In applying this heightened standard of competence, we find that the appellant was not competent to conduct his own defense. Thus, the military judge erred in accepting the appellant's waiver of his right to counsel and in permitting him to proceed *pro se.* Finally, with respect to specified issue III, this error may only be remedied by setting aside the findings and sentence.

## Summary of Facts

The charged offenses grew out of two incidents in July of 1987, both occurring in the work spaces of appellant's command at Camp Pendleton, California. The first incident took place on 17 July and concerned the appellant's unprovoked verbal abuse of Staff Sergeant Wilson and physical assault upon Master Sergeant Scheuch. Appellant entered the S–4 office spaces and asked those present where his family was. SSGT Wilson responded that the whereabouts of the appellant's family was unknown but that he would try to help the appellant find them. The appellant refused this assistance, accused SSGT Wilson of playing games with him, and yelled a series of profanities at him. MSGT Scheuch intervened and ordered the appellant to take a seat on the other side of the office. The appellant refused to stay seated and twice kicked MSGT Scheuch in the shin, struck him with his fist between the eyes, raised a phone in a threatening manner and yelled profanities at him.

As a consequence of the foregoing incident as well as a bad-conduct discharge adjudged at a prior court-martial, the appellant was placed on appellate leave. The appellant also was barred from Marine Corps Base, Camp Pendleton, California, and ordered not to return without prior written permission.

The second and much more serious incident occurred three days later when the appellant entered the base in violation of the bar order, went to his former work spaces and demanded to know where SSGT Wilson was. MSGT Scheuch informed the appellant that SSGT Wilson was not present and asked if he could help instead. Without replying, the appellant turned and began to leave. Major Wooton stopped the appellant, reiterated that SSGT Wilson was not present, but asked if he could help. The appellant withdrew a knife from his pocket and, in a threatening manner, stated to Major Wooton that he needed help with his family. Major Wooton again offered his help, but the appellant responded by stabbing him in the chest. A second blow by the appellant caught Major Wooton on the left arm. The appellant then continued the attack by striking MSGT Scheuch with the knife. Finally, SSGT Wilson came upon the scene and was able to subdue the appellant.

## I

## Waiver of Counsel

### A

## Background

At the beginning of the trial the accused informed the military judge that he wanted to represent himself rather than be represented by detailed defense counsel, individual military counsel or civilian counsel.[1] The military judge advised the accused that such a course of action would be unwise and that he "would be much better off being represented in these proceedings by some lawyer." He further advised the accused of some of the difficulties he would encounter in preparing for his own defense especially since he was confined in the brig. He told the accused that he should have a legman and he needed to know in advance what the government witnesses planned to testify to. He suggested that even if the accused would not allow his detailed defense counsel to represent him in court, he should at least allow him to help prepare his case for trial. When the accused responded that he did not want even this limited assistance from counsel, the military judge asked, rhetorically:

> MJ: Do you just intend to come in here cold and for the first time, once they are testifying against you in a general court-martial, hear what they say and cross-examine them simply from the seat of your pants?

1. The accused also waived his right to counsel at the Article 32, UCMJ, pretrial investigation. At the investigation, the accused did not cross-examine any of the government's witnesses nor did he present any evidence. We will apply the same analysis and the same heightened standard of competence to the accused's self-representation at the Article 32 investigation as we do to his self-representation at trial and thus, can only likewise conclude that the accused was not competent to represent himself thereat.

ACCUSED: Yes, sir.

MJ: Do you understand what is going on here?

ACCUSED: Yes, sir.

R. at 14 and 15.

Thereupon, the military judge, without any inquiry into the accused's competence to represent himself, accepted his waiver of the right to counsel and permitted him to proceed *pro se.*[2]

## B

### Applicable Legal Principles

■■■■ A higher standard of competence must exist in order for an accused to waive counsel and conduct his own defense than would be required to merely assist in his own defense while being represented by counsel.[3] *People v. Burnett,* 188 Cal.App. 3d 1314, 234 Cal.Rptr. 67 (1987). That is, an accused may be sufficiently competent to stand trial with the assistance of counsel but lack the capacity to stand trial without the benefit of counsel. *Massey v. Moore,* 348 U.S. 105, 108, 75 S.Ct. 145, 147, 99 L.Ed. 135 (1954). The legal basis for this higher standard of competence to proceed *pro se* is derived from the very nature of the Sixth Amendment to the United States Constitution.

The United States Supreme Court has held in a long line of cases that an ac-cused's sixth amendment right to counsel is necessary to protect his fundamental right to a fair trial. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); and *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Therefore, defense lawyers in criminal cases are viewed as "necessities, not luxuries." *Gideon v. Wainwright,* 372 U.S. at 344, 83 S.Ct. at 796. Without counsel, the right to a trial itself would be "of little avail," *Powell v. Alabama,* 287 U.S. at 69, 53 S.Ct. at 64, since, "a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues...." *Strickland v. Washington,* 466 U.S. at 685, 104 S.Ct. at 2063. The Supreme Court has also recognized a defendant's right to waive counsel and to proceed *pro se.* In *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), it was held that the "Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused *personally* the right to make his defense." *Id.* at 819, 95 S.Ct. at 2533.

In order to resolve the potential conflict between the right to counsel and the right to represent oneself,[4] the Supreme Court

---

**2.** It is noted that the military judge required the detailed defense counsel to remain in the rear of the courtroom throughout the trial and to prepare for trial in case appellant changed his mind as to waiving his right to counsel. *See* R.C.M. 506(d). MCM, 1984. The detailed defense counsel did not further participate in the proceedings, except to say at arraignment that he had no motions or other matters to bring before the court-martial. The detailed defense counsel specifically noted on the authentication page of the record of trial that "I in no way assisted Private Freeman in his defense."

**3.** The standard for determining competence to assist in one's own defense was set forth by this Court in *United States v. Martinez,* 12 M.J. 801 (N.M.C.M.R.1981):

To assist in defense does not refer to matters involving legal questions, but to such phases of the defense as an accused would normally assist in, such as accounts of facts, identities of witnesses and similar matters. *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.

2d 435 (1975). The question is whether the accused is possessed of sufficient mental power, and has such understanding of his situation, such coherency of ideas, control of his mental facilities, and the requisite power of memory, as will enable him to testify in his own behalf, if he so desires, and otherwise to properly and intelligently aid his counsel in making a rational defense. *United States v. Williams,* 5 U.S.C.M.A. 197, 206, 17 C.M.R. 197, 206 (1954).

*Martinez,* 12 M.J. at 808.

This inquiry clearly focuses on the ability of the accused to aid another who is presumed to be more competent and knowledgeable in the law as distinguished from the ability to defend oneself without any assistance.

**4.** The Supreme Court recognized this dichotomy: "There can be no blinking the fact that the right of an accused to conduct his own defense seems to cut against the grain of this Court's decisions holding that the Constitution requires

mandated that an accused must "knowingly and intelligently" waive his right to the assistance of counsel. He must be made fully aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Faretta v. California,* 422 U.S. at 835, 95 S.Ct. at 2541 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).

In *United States v. Tanner,* 16 M.J. 930 (N.M.C.M.R.1983), we adopted the "constitutionally *minimum* standard of inquiry necessary to establish a valid and effective waiver of representation [as] set out in" *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948):

> To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which a plea is tendered.

*Tanner,* at 935 (citing *Von Moltke,* 332 U.S. at 723, 68 S.Ct. at 323).

■ Subsequent to our decision in *Tanner,* the 1984 version of the Manual for Courts–Martial was published and specifically provided that an accused's waiver of counsel "shall be accepted by the military judge only if the military judge finds the accused is competent to understand the disadvantages of self-representation and that the waiver is voluntary and understanding." R.C.M. 506(d), MCM, 1984. As stated in the Analysis, App. 21, R.C.M. 506(d), this condition precedent to the ac-

ceptance of an accused's waiver of counsel is based on *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Thus, an accused does not possess an unfettered right to waive representation by counsel. On the contrary, it is prejudicial error to permit an accused to proceed *pro se* unless it is first affirmatively ascertained that he or she is competent to understand the disadvantages of self-representation and, second, that the accused in fact understands such disadvantages.[5] Only then will the waiver constitute a voluntary or understanding one.

## II

### The Accused Was Not Competent to Proceed *Pro Se*

■ The fact that the accused was not competent to proceed *pro se* is evident from his attempt to conduct his own defense. The accused did not ask any questions of three of the seven Government witnesses and, of one witness, Major McGann, he asked only this one question:

Q. Sir, my first question is have we—where was the place that we—I don't remember meeting you. I'd like to know where was the place that we did see each other?

A. That was in Building 1160, Marine Corps Base, which is the building where the commanding general of Marine Corps Base—his office is. Specifically, it was on the second floor in the military justice office. I don't remember the actual room number, but it was right above the parking lot, facing out over the parking lot on the second floor.

ACCUSED: Thank you.

MJ: Is that your only question?

ACCUSED: Yes, sir.

MJ: Do you have any questions?

TC: No, sir.

---

that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel." *Faretta v. California,* 422 U.S. at 832, 95 S.Ct. at 2539.

**5.** There is a direct relationship between an accused's competence to represent himself and his ability to fully understand the dangers and disadvantages of self-representation. *See People v. Burnett,* 188 Cal.App.3d 1314, 234 Cal.Rptr. 67 (1987).

MJ: I have several.

R. 57.

During the ensuing examination by the military judge, Major McGann, stated that when he was explaining to the accused the order barring him from the base, the accused kept asking inappropriate and bizarre questions:

A. Sir, as I recall, the first question had to do with whether I could help him get the bugs off of him.

Q. Were there bugs on him?

A. I didn't see any, sir.

Q. Did you look?

A. Just across the table, sir.

Q. Okay. What was the other question?

A. The other question was, sir, "They are keeping me from seeing my family. My family is aboard the base, sir."

Q. Did that strike you as bizarre under the circumstances?

A. No, sir, not until I inquired further.

Q. And learned what?

A. That he didn't have family aboard the base, sir, and never did.

R. 58.

This testimony of Major McGann clearly raised the issue of appellant's inability to competently conduct his own defense as did appellant's attempt to cross-examine the victim of the stabbings, Major Wooten:

Q. Sir, on the day of the incident, I came to the battalion. I asked you a question first. I said to you, "Is Staff Sergeant Wilson in," did I not? Well, the question is—I came and I asked you did Staff Sergeant Wilson tell you not—that I had already asked him—there were some unusual things going on. There was some weird noises, some weird voices, and they were coming out of thin air. Some weird things was happening. I also said at that time that my family had been mentioned—

MJ: Excuse me. Let's break it up into one question at a time.

R. 90–91

We conclude from the accused's cross-examination of the witnesses that he was both ill-prepared and ill-equipped to do so.

The accused continued to demonstrate his lack of competence to proceed *pro se* throughout the remainder of the trial. For example, the following discussion transpired after findings when the military judge attempted to explain to the accused the maximum allowable sentence:

MJ: What don't you understand?

ACCUSED: Sir, I know I have radar on my mind.

MJ: You have what?

ACCUSED: Radar. I have said that at the trial that people can read my mind. They can talk over my mind, sir.

MJ: Okay.

ACCUSED: I want to know if that was or was not believed. It's still going on at this time. And it's also been mentioned facts pertaining to my family. I need both of those questions answered.

R. 199.

Finally, in an attempt to summarize what he was trying to accomplish at trial, the appellant, for his argument on sentencing, stated the following:

ACCUSED: No, sir. I just would like to say that if the ability to listen to and talk over another person's mind can impair another person's ability to do his job, especially if his family is also mentioned. I mean, besides the fact of the family being mentioned, that alone is enough to cause reaction, a strong reaction, but to talk over another person's mind or to listen to his mind is not really humane. That's the way I felt, sir. I tried to express that. I tried to ask for help. There was nobody there that could help me. That's what I tried to ask. I have nothing else.

R. 207–208.

■ Based on all of the foregoing, this Court finds that the appellant was not competent to conduct his own defense. The record of trial reflects that the accused's most likely defense to the charges was lack of mental responsibility. The accused was hardly competent to present the complicated defense of lack of mental responsibility even if he had recognized that such a de-

fense existed.[6] We therefore hold that the military judge erred to the substantial prejudice of the appellant by permitting him to proceed *pro se*.[7]

## III

### Adequacy of the R.C.M. 706

### Mental Examination of Appellant

■ The military judge in allowing appellant to conduct his own defense did not initially order a R.C.M. 706 mental examination.[8] However, after all the Government's evidence was presented and after appellant testified that he had heard unusual, strange, and weird noises and voices prior to stabbing Major Wooten, the military judge ordered the R.C.M. 706 examination. He set forth the standard questions of R.C.M. 706 relating to appellant's mental condition without explicitly differentiating the issue of competence to assist in one's

defense from the issue of competence to conduct one's defense.

The one doctor "board" summarily concluded that the accused did not have a mental disease or defect, and had sufficient mental capacity to understand the nature of the proceedings and to conduct or cooperate intelligently in the defense.[9] The board did not explicitly focus on or reach any conclusions concerning the issue of the accused's competence to conduct his own defense. Accordingly, the findings of the 706 board were not only inadequate but irrelevant with respect to the issue of the accused's competence to proceed *pro se*, and thus, could not serve to justify the earlier authorization for him to do so.

■ In any event a 706 board's findings on the issue of competence to conduct one's own defense could not be merely adopted by the military judge without more. He must reach his own independent decision on the issue after first gathering appropriate

6. "No trial can be fair that leaves the defense to a man who is insane, unaided by counsel, and who by reason of his mental condition stands helpless and alone before the court.... Any defense is hopelessly beyond reach for an accused who is insane. He stands convicted on a charge which he could not contest and yet for which he may well have had a complete defense." *Massey v. Moore*, 348 U.S. at 108–109, 75 S.Ct. at 147.

7. This case should not be read as standing for the proposition that an accused's conviction will be overturned on appeal if he shows that after waiving counsel, he did not perform very well. Once a competent accused has properly waived his right to counsel, he cannot be later heard to complain of the ineffective defense he has provided to himself. *United States v. Mogavero*, 20 M.J. 762 (A.F.C.M.R.), *pet. denied*, 21 M.J. 22 (C.M.A.1985).

8. R.C.M. 706, MCM, 1984, imposes a duty upon the commander, investigating officer, trial counsel, defense counsel, military judge or even a member of the court, who has reason to believe that an accused lacks mental responsibility for any offense charged or lacks capacity to stand trial, to transmit this belief or observation to the proper authority.

Defense counsel, because of their close proximity and special fiduciary relationship to an accused, must always be mindful of this duty. The detailed defense counsel herein was certainly remiss in not attempting to have a R.C.M. 706 board examine his client prior to the court-mar-

tial and he should have raised the issue of the accused's competence to proceed *pro se* at trial.

A trial counsel acting on behalf of the United States and as an officer of the court is also duty bound to protect an accused's right to a fair trial and to ensure that justice is done. *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1934). The trial counsel herein, armed with the history of this case and having observed the accused's conduct at trial, was also remiss in not pursuing the issue of the accused's mental condition with the convening authority and/or the military judge.

Ultimately the responsibility to ensure that an accused is mentally competent to conduct his own defense lies with the military judge. R.C. M. 506(d), MCM, 1984. It should have been apparent to the military judge, as well as both counsel, early in this trial that the accused's mental competence was in serious question and, therefore, a 706 board should have been ordered earlier than it was.

9. The abbreviated extent of the R.C.M. 706 examination is evident by the following paragraph in the report:

After reviewing his service record book, health record, the court order, charge sheet, and transcript of trial, attempts were made to interview PVT Joseph FREEMAN. Due to his refusal to cooperate in his evaluation as demonstrated by his refusal to speak this evaluation has been based on a review of the material contained in the transcript of the ongoing trial, the conversations between him and myself in April 1987, ad (sic) the observations by me of him in October 1987.

documentation, testimony, and other relevant evidence. In the instant case, however, the military judge, after considering the board's responses, found "nothing therein to suggest to me that this trial should not go forward. So, it shall."

## IV

### Decision

Appellant was denied his sixth amendment right to counsel. Therefore, we set aside the findings of guilty and the sentence. A rehearing is authorized. In the event referral of the charges to a general court-martial is contemplated, a new Article 32, UCMJ, investigation shall be conducted. *See* Note, *supra* note 1, at 791. Prior to the commencement of any proceeding, a new R.C.M. 706 mental examination shall be conducted to ascertain the appellant's responsibility for the offenses charged and his competence to stand trial. *United States v. Massey*, 27 M.J. 371 (C.M. A.1989).

■ Our decision that the appellant was not competent to proceed *pro se* at either the Article 32 investigation or the trial does not preclude the possibility that he may be competent to conduct his own defense at future proceedings, since one's competence is subject to change over time. Accordingly, should the appellant once more indicate his desire to proceed *pro se*, the investigating officer and/or the military judge shall conduct the necessary hearing to ascertain his competence in that regard in a manner consistent with this opinion and the guidelines set forth in *Tanner*, 16 M.J. at 935. In reaching such a determination it is suggested that the R.C.M. 706 board first be asked to specifically respond to the questions set forth in the attached appendix. Should the accused once more refuse to cooperate with the R.C.M. 706 board, this fact may be considered in determining his competence to proceed *pro se*, since such a refusal will necessarily deprive the presiding officer of evidence relevant to the issue. The accused must demonstrate his competence to represent himself and thus should cooperate in all aspects of the inquiry.

Chief Judge BYRNE and Judge RUBENS concur.

### APPENDIX

1. At what level of education does the accused read?

2. At what level of maturity does the accused operate?

3. Does the accused have a reasonably accurate awareness of his surroundings to appreciate the nature of a criminal trial and the possible consequences?

4. Is the accused able to understand and use relevant information rationally?

5. Can the accused coherently communicate relevant information to others and present comprehensible arguments to support his positions?

6. Does the accused suffer from any physical or mental infirmities that would negatively impact on his ability to function at an adverserial setting?

7. Does the accused suffer from any delusions or hallucinations that would impair his ability to comprehend the proceeding?

8. Is the accused presently oriented to the three planes of reality?

9. Is it likely that the accused will have periods where he slips in and out of reality?

10. Can the accused focus and concentrate his attention on a criminal trial for an extended period of time without being easily distracted?