UNITED STATES, Appellee,

v.

John I. STREATER, Jr., Staff Sergeant,
U.S. Army, Appellant.

No. 64,031
CM 8900151.

U.S. Court of Military Appeals.

Argued Nov. 29, 1990.

Decided May 29, 1991.

For Appellant: *Captain Lauren B. Leeker* (argued); *Lieutenant Colonel Russell S. Estey, Captain Brian D. Bailey, Captain Allen F. Bareford* (on brief); *Colonel Robert B. Kirby.*

For Appellee: *Captain Laurie Barlett* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Maria C. Fernandez, Captain James K. Reed* (on brief).

*Opinion of the Court*

COX, Judge:

Pursuant to his pleas, appellant was convicted of unpremeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 USC § 918. He was sentenced by the military judge to total forfeitures; reduction in grade to Private E–1; dishonorable discharge; and confinement for life. Pursuant to a pretrial agreement, the convening authority approved only 18 years of confinement while approving the remainder of the sentence. The Court of Military Review affirmed the findings and sentence in a short-form opinion.

This Court granted review of the following issue:

## WHETHER THE MILITARY JUDGE ERRED BY FAILING TO ADDRESS APPELLANT'S COMPETENCE TO WAIVE COUNSEL AND REPRESENT HIMSELF.

On January 18 and 26, 1989, appellant was tried at Fort Huachuca, Arizona, before a military judge sitting as a general court-martial. At the beginning of the trial, the military judge explained to appellant his right to be represented at the court-martial by "a qualified lawyer" acting as his defense counsel, namely Captain Mosher, who had been detailed as appellant's military defense counsel. *See* RCM 506, Manual for Courts–Martial, United States, 1984; and Art. 27, UCMJ, 10 USC § 827. The military judge advised appellant that he could also choose to secure a civilian defense counsel should he so desire, as well as the other rights to counsel enjoyed by an accused under Article 27. Appellant was then asked by whom he wished to be represented. Appellant responded, "Myself, Sir." *(See* Appendix for the complete exchange between the military judge and appellant on this matter.)

The military judge then discussed appellant's decision with him and advised him of the potential dangers involved in self-representation. Furthermore, although he allowed appellant to represent himself, he required the continued presence of the detailed defense counsel to assist appellant if need be and to provide "procedural" advice or, perhaps, to "poke" appellant "in the ribs" if he should need some prompting.[1]

■■■ Appellant now claims on appeal that the inquiry by the military judge was inadequate to establish that he was "competent" to represent himself. We hold that the military judge's inquiry and advice were sufficient to ensure that appellant appreciated the perils of defending himself. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); RCM 506(d).

Prior to the court-martial, a sanity board was conducted to determine if appellant was competent to stand trial. The sanity board was not completed when the court-martial convened or when the accused elected to represent himself. The military judge was made aware of the status of the sanity board and entered appropriate rulings to the effect that the case would be reopened if the results of the sanity board suggested that the accused was not competent. Furthermore, appellant was advised that the guilty pleas would then be set aside.[2] Based upon the existence of this incomplete sanity board, appellant now argues that the military judge was on notice to conduct a more thorough inquiry into accused's mental competence to direct his own defense and that he was required to make a finding on the record that appellant was competent to make the decision to represent himself and to actually defend himself.

In *United States v. Freeman,* 28 MJ 789 (NMCMR 1989), the Court of Military Review held that RCM 506(d) imposed a requirement upon military judges to make a particularized inquiry into the mental competence of an accused who elects to represent himself at a court-martial and to make an affirmative finding that the accused is indeed "competent to understand the disadvantages of self-representation." 28 MJ at 793. As that court noted, the rule is based upon the teachings of *Faretta v. California, supra. See also Massey v. Moore,* 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135 (1954). We agree with the Court of Military Review. RCM 506(d) requires the military judge to satisfy himself both that the ac-

---

1. Although not of decisional importance, it should be noted that appellant was represented by counsel throughout most of the trial process. This included her participation in negotiating a plea agreement. She also assisted in the pretrial development of appellant's case in mitigation and made closing argument. Appellant's actual self-representation was at trial and consisted of presenting his case on the sentence.

2. The sanity board results, which were reported to the court-martial on January 26 and made part of the record, stated:

    The accused appreciates his peril, understands the nature of the proceedings against him, and is able to conduct and cooperate intelligently in his own defense.

cused is mentally competent to make the decision to represent himself and that he clearly understands the disadvantages of self-representation.

Thus, we agree with appellant that the military judge erred in not making explicit findings on the record, either at the outset of the trial or after he had had sufficient time to observe appellant in the court room, that appellant was sufficiently competent to understand his choice to represent himself and that he was equal to the task of choosing.[3]

Nevertheless, the lack of a particularized finding by the military judge does not compel reversal in this case. First, there is no evidence before us that appellant lacked competence. Indeed, the results of the sanity board are in the record and support a conclusion that appellant was competent. But the most compelling evidence is the performance of appellant as his own counsel. Our review of the record, unlike the bizarre record in *United States v. Freeman, supra* 28 MJ at 793 and 794, demonstrates that appellant handled himself very well; relied upon his appointed counsel from time to time for valuable assistance; and participated appropriately in the proceedings. Furthermore, the trial was conducted before a military judge without members. Thus, throughout the proceedings, the military judge was able to ensure that appellant was not being harmed by his decision to represent himself. Lastly, appellant enjoyed the benefit of an intelligently negotiated pretrial agreement which limited his sentence for unpremeditated murder to 18 years of confinement. His responses to the military judge's inquiry into the propriety of the plea more than demonstrate his total competence and acceptance of responsibility for his crime.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Senior Judge EVERETT concur.

---

**3.** It might be said that no one is competent to represent himself. The old proverb—"He who is his own lawyer, has a fool for his client," *The Macmillan Book of Proverbs, Maxims, and Famous Phrases* 1370 (1965) [attributed to CHEA-

APPENDIX

The colloquy was as follows:

MJ: Who do you want to be your defense counsel in this case?

ACC: Myself, sir.

MJ: Do you have any legal training?

ACC: No, sir.

MJ: When you go to trial acting as your own lawyer, then you are expected to conduct your defense just as if you were a qualified lawyer, do you understand that?

ACC: Yes, sir.

MJ: Just as an example of this, the government may want to offer some evidence in[,] which would normally not be admissible, and a trained lawyer would stand up and object to that, and the evidence would be kept out. If you're acting as your own lawyer and you don't recognize that it's not admissible, and therefore don't object to it, then the evidence comes in. Do you understand this?

ACC: Yes sir.

MJ: And so a trained lawyer can provide a great deal of benefit for you by knowing the procedures, by knowing the Rules of Evidence, and by knowing the rules of law. Do you understand this?

ACC: Yes, sir.

MJ: Generally when you represent yourself, you are personally involved in it and it's very difficult for you to have an objective view of the proceedings that are taking place. And sometimes you become so involved that you harm yourself by what you say and by your actions in court. Do you understand this?

ACC: Yes, sir.

MJ: Whereas, a lawyer who has a duty to represent you can act more objectively, and can follow the procedures and is

---

LES, *Proverbial Folk–Lore* 76 (1875) ]—is based on experience and is not just some trite saying. However, the law does allow one to try. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed. 562 (1975).

less likely to do you harm and more likely to do you good. Do you understand this?

ACC: Yes, sir.

MJ: As a general rule—as a general rule acting as your own lawyer is not a good policy. Even if you're legally trained it's not a good policy. And if you're not legally trained it's even worse. Do you understand that?

ACC: Yes, sir.

MJ: Have you discussed this idea with Captain Mosher?

ACC: Yes, sir.

MJ: Have you tried to talk to any other lawyer?

ACC: No, sir.

MJ: Would you like to talk to another lawyer about this?

ACC: No, sir.

MJ: Do you understand all the things that I've said to you?

ACC: Yes, sir.

MJ: Do you still want to act as your own lawyer?

ACC: Yes, sir.

MJ: All right. You have a right to do that. However, I'm going to ask Captain Mosher to stay here throughout the trial and to be available. She can provide you with advice. She can provide you with procedural instructions. She can poke you in the ribs when it's time to object to something, if necessary. On the other hand she will not do anything without your agreement. Do you understand ... this?

ACC: Yes, sir.

MJ: She's available to act as a lawyer. She will not do anything unless you agree to it. Do you understand that?

ACC: Yes, sir.

MJ: Captain Mosher?

DC: Yes, Your Honor.

MJ: For the record will you state your qualifications and detailing, please?

DC: Yes, Your Honor, I have been detailed to this court by myself, Senior Defense Counsel, Fort Huachuca, Arizona. I am qualified and certified under Article 27(b) and previously sworn under Article 42(a). I have not acted in any manner which might tend to disqualify me in the defense of Staff Sergeant Streater.

MJ: Now, Sergeant Streater, if at any time during the course of the trial, you feel that you could benefit from her advice, you want to take a break and talk to her about a point in the trial, just let me know, and we'll proceed with that. Do you understand this?

ACC: Yes, sir.