UNITED STATES, Appellee,

v.

Joseph R. MIX (aka Robert J. Mix),
Private, U.S. Army, Appellant.

No. 66,857.

CM 8800256.

U.S. Court of Military Appeals.

Argued May 7, 1992.

Decided Sept. 24, 1992.

For Appellant: *Captain Teresa L. Norris* (argued); *Colonel Robert B. Kirby, Lieutenant Colonel James H. Weise, Captain Alan M. Boyd, Captain Michael P. Moran* (on briefs).

For Appellee: *Captain Glenn L. Kirschner* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Daniel J. Dell'Orto, Captain Timothy W. Lucas* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Appellant was tried by general court-martial composed of officer and enlisted members. Contrary to his pleas, he was convicted of conspiracy to commit larceny, 3 specifications of desertion, violation of a general regulation by failing to store arms and ammunition in the arms room, 2 specifications of escape from confinement, destruction of government property, destruction of private property, larceny, arson, housebreaking, and breaking restriction, in violation of Articles 81, 85, 92, 95, 108, 109, 121, 126, 130, and 134, Uniform Code of Military Justice, 10 USC §§ 881, 885, 892, 895, 908, 909, 921, 926, 930, and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 25 years, total forfeitures, and reduction to the lowest enlisted pay grade.

After a new post-trial recommendation by the staff judge advocate, *see* 29 MJ 956 (ACMR 1990), the convening authority approved the sentence as adjudged. The Court of Military Review affirmed the findings and the sentence. 32 MJ 974 (1991).

We granted review on the following issues:

I

WHETHER THE MILITARY JUDGE ERRED BY ALLOWING APPELLANT TO WAIVE ASSISTANCE OF COUNSEL AND PROCEED *PRO SE.*

II

WHETHER THE MILITARY JUDGE ERRED BY ACCEPTING APPELLANT'S WAIVER OF COUNSEL WHEN APPELLANT'S REQUEST TO PROCEED *PRO SE* WAS NOT CLEAR AND UNEQUIVOCAL.

III

WHETHER THE MILITARY JUDGE ERRED BY DENYING A DEFENSE MOTION TO SUPPRESS WEAPONS FOUND DURING A SEARCH OF APPELLANT'S CAR.

IV

WHETHER THE MILITARY JUDGE ERRED BY DENYING A DEFENSE MOTION TO SUPPRESS A LETTER WRITTEN BY APPELLANT AND SEIZED BY A MAIL CLERK AT THE

INSTALLATION DETENTION FACILITY.

## I

Initially at trial, appellant was represented by his detailed counsel and individual military counsel. Upon being advised of his rights to detailed counsel, military counsel, or civilian counsel at no expense to the Government, appellant expressed his desire to be represented by his uncle who was an attorney in California. His uncle was contacted but indicated that he had no interest in representing appellant and did not have a criminal practice.

At this time the military judge advised appellant of his right to represent himself but counseled him that if he did so he would have to abide by "the rules of evidence and rules of law." Upon learning that appellant was not a lawyer, the judge also indicated that a lawyer would have a better understanding of the elements of the offenses, the defenses involved, and the dangers that would be present, including identification of weaknesses in the Government's case. The judge did tell appellant he could have a lawyer at his table to advise him. Even so, appellant was advised that he would have to comport with the rules as to cross-examination and argument, and that this would be very difficult. Again, appellant requested his uncle who was contacted a second time. His uncle again declined to represent appellant. At this time appellant indicated he did not want to be represented by the detailed counsel or individual military counsel but, instead, wanted to represent himself. The judge again advised him that he would be held to the standards of a lawyer: would have to ask lawyer-like questions and conduct his own voir dire. The judge emphasized the difficulty of self-representation. Appellant did request that a lawyer sit with him at counsel table and advise him. The judge granted appellant's request.

## II

The first two issues before this Court can be combined into the issue whether there was a clear and unequivocal waiver by an individual competent to proceed *pro se*. We hold that appellant was competent to proceed *pro se* and that the military judge's inquiry and advice were sufficient to ensure a clear and unequivocal waiver by appellant, who functioned very effectively as his own advocate.

The current standards regarding the right of self-representation based on *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), are set forth in RCM 506(d), Manual for Courts–Martial, United States, 1984:

> *Waiver.* The accused may expressly waive the right to be represented by counsel and may thereafter conduct the defense personally. Such waiver shall be accepted by the military judge only if the military judge finds that the accused is competent to understand the disadvantages of self-representation and that the waiver is voluntary and understanding. The military judge may require that a defense counsel remain present even if the accused waives counsel and conducts the defense personally. The right of the accused to conduct the defense personally may be revoked if the accused is disruptive or fails to follow basic rules of decorum and procedure.

▆ The military judge directed the convening authority to inquire into appellant's mental responsibility and competence to conduct his own defense. About 1 month later a sanity board consisting of two psychiatrists and a psychologist concluded that "[t]he accused has sufficient mental capacity to understand the nature of the proceedings and to conduct or cooperate intelligently in the defense—although he may choose not to do so." 32 MJ at 981. We agree with the Court of Military Review that this was not a *pro forma* response but did relate to his ability to conduct his defense. 32 MJ at 981.

RCM 506(d) is based on *Faretta v. California, supra.* The Supreme Court there held that there is a constitutional right to self-representation, provided there is a

knowing and intelligent waiver of the right to counsel. An accused, desiring to proceed without counsel, "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.*, 422 U.S. at 835, 95 S.Ct. at 2511. The Court, however, did not specify what procedural undertakings were necessary to satisfy the "knowing and intelligent" waiver with "eyes open."

The right to proceed *pro se* attaches only if the defendant waives the right to counsel. *United States v. Wadsworth*, 830 F.2d 1500, 1504 (9th Cir.1987). The waiver of the right to counsel must be "unequivocally" asserted in order for the defendant to proceed *pro se*. *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1064 (11th Cir 1986). The United States Courts of Appeals are split as to the exact extent of the inquiry necessary to ensure a knowing and intelligent waiver. Some require a direct, on-the-record, searching inquiry by the trial judge which advises the defendant of the dangers and disadvantages of proceeding *pro se*. *See, e.g., United States v. McDowell*, 814 F.2d 245 (6th Cir.), *cert. denied*, 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987). Other courts have only required a minimal inquiry, in general warning against proceeding *pro se* rather than a specific detailed inquiry. *See, e.g., United States v. Campbell*, 874 F.2d 838, 846 (1st Cir.1989). A middle ground adopted by other courts is requiring an inquiry that is not searching but in which the totality of the circumstances establishes a knowing and intelligent waiver.

■ We need not decide what type of inquiry is required because the judge advised appellant on several occasions of the benefits of a lawyer and the disadvantages of representing oneself, specifically as to the rules of evidence, cross-examination, arguments, and voir dire. He also indicated that appellant would be at a disadvantage because the Government would be represented by a lawyer. Certainly, this warning was more detailed than that held sufficient in *United States v. Hafen*, 726 F.2d 21, 25 (1st Cir.), *cert. denied*, 466 U.S. 962, 104 S.Ct. 2179, 80 L.Ed.2d 561 (1984), set forth below:

> The trial court, on learning that appellant had decided at the last minute to proceed pro se, remarked:
>
> > "You have the Federal Defender made available to you. If you are foolish enough to want to go ahead on your own, that is your business.... Mr. Walker will be here and available, if you need him."
>
> The appellant responded:
>
> > "I understand fully what you are saying. I know about the old adage that, 'He who represents himself', you know...."

*Id.* at 25–26. Here the judge implicitly found that appellant was "competent to understand the disadvantages of self-representation and that the waiver [was] voluntary and understanding." RCM 506(d). *See United States v. Streater*, 32 MJ 337 (CMA 1991).

Furthermore, the record demonstrates that appellant handled himself very well. He conferred with his defense counsel a number of times. He conducted his own voir dire, exercised challenges for cause and a preemptory challenge, objected to evidence as beyond the scope of the direct examination, and made successful hearsay objections. He also asked for a delay to have an opportunity to talk to other witnesses.

Future issues on this subject could be precluded or at least expedited on appeal if there had been a more formal inquiry similar to that set out in the Appendix.

### III

The third and fourth granted issues raise basic Fourth Amendment questions: *i.e.,* whether there was a search or seizure involving the accused's person, house, papers, or effects; and if there was such a search or seizure, then whether Fourth Amendment protections were satisfied.

## A

As to the third granted issue (admissibility of the items found in appellant's car), we will examine the protections of the Fourth Amendment; that is, whether the search was authorized by competent authority based upon probable cause; whether there was a sufficient nexus between the items to be seized and the place to be searched; whether the specificity requirements were satisfied; and, if not, whether an exception to the exclusionary rule should be applied.

The specific question before us is whether the military judge erred by failing to suppress a pistol-grip shotgun and a semi-automatic rifle seized from appellant's car. *See* 32 MJ at 982. The search of the car for weapons was authorized by his battalion commander, Lieutenant Colonel John S. Haluski. Lieutenant Colonel Haluski was informed by the company commander, Captain Robert K. West, that the informant had knowledge of the existence of the weapons and that the weapons had been in the barracks. If they were not in the barracks, then they were in appellant's car. The informant's name was not given to the battalion commander but was known by the company commander, who told his superior that he considered the informant to be a good soldier with a "good reputation." The battalion commander also knew that appellant was restricted to the unit area, that appellant had been seen driving a car along the edge of the battalion area the previous day, and that the car was last seen parked adjacent to the dining facility. Upon receiving the information, LTC Haluski authorized CPT West to search appellant's car "if the car was [found] behind the dining facility" as reported. The car was located in a parking area used by three battalions that formed a U-shape around the dining facility.

■ An impartial commander may authorize a search based on probable cause. Mil.R.Evid. 315(f)(2), Manual, *supra*, provides: "Probable cause to search exists when there is a reasonable belief that the ... property ... sought is located in the place ... to be searched." In determining whether there is probable cause, the commander will apply the totality-of-the-circumstances test. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). While *Gates* indicated that *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), were unduly rigid, they are still alive. "*Gates* ... did not announce that the informer's reliability and the source of his knowledge were no longer material in determining probable cause." *United States v. Moore*, 23 MJ 295, 298 (CMA 1987). While the *Aguilar–Spinelli* test has been rejected, it is still "highly relevant." *Illinois v. Gates*, 462 U.S. at 230, 103 S.Ct. at 2327. Drafter's Analysis, Manual, *supra* at A22–28. Although satisfying the *Aguilar–Spinelli* test is not a condition precedent to finding probable cause, if the *Aguilar–Spinelli* test is satisfied, so is the *Gates* test.

■ In this case, even the more rigid *Aguilar–Spinelli* test is met. The basis-of-knowledge test is met because the informant obtained his information as a result of personal observation. *Spinelli v. United States*, 393 U.S. at 423, 89 S.Ct. at 592 (White, J., concurring); *cf. United States v. Ochoa*, 12 MJ 281 (CMA 1982). The reliability test is met because the informant was known to the company commander as a reliable person having a good reputation. *United States v. Layne*, 29 MJ 48 (CMA 1989); *United States v. Wood*, 25 MJ 46, 48 (CMA 1987). Additionally, as noted in *Layne* a false report by a military member to a commander may be an offense under Article 107, UCMJ, 10 USC § 907. *Id.* at 50 n.6.

The information CPT West gave to LTC Haluski provided reasonable grounds to believe the items to be seized were located in appellant's car in the parking lot adjacent to the dining facility. Thus the information CPT West gave to LTC Haluski satisfied the probable-cause requirement for search of appellant's car. The information was based on the personal observation of an individual from CPT West's company who

had seen the weapons the day before in the barracks. A search of the barracks proved unproductive, and the battalion commander knew that appellant had been restricted to the unit and that the storage places for the weapons would be the barracks or appellant's car. The informant was considered reliable and had the reputation of being a good soldier.

■ It is not enough that there was probable cause for the search and a sufficient nexus between the items to be seized and the place to be searched and satisfaction of specificity requirements. The key question is whether there was a search authorization by competent authority.

■ Mil.R.Evid. 315(d)(1) provides: "A commander ... who has control over the place where the property ... to be searched is situated or found" may grant a search authorization. Under the peculiar facts of this case all three battalion commanders as well as the brigade commander had control over the place where the automobile was located. This was a joint parking lot which surrounded the dining facility used by the three battalions. Thus, LTC Haluski could authorize a search of appellant's car for a pistol-grip shot gun and a semi-automatic rifle. Alternatively, the good-faith exception applies because the battalion commander acted as a rational, reasonable commander having probable cause to believe that he could authorize a search of appellant's car. *United States v. Lopez*, 35 MJ 35 (CMA 1992); *People v. Ruiz*, 217 Cal.App.3d 574, 265 Cal.Rptr. 886 (3d Dist.1990) (good-faith exception saved warrant when officer failed to tell judge issuing out-of-county warrant that crimes under investigation occurred in issuing county).

### B

The fourth granted issue is whether the judge erred in denying a motion to suppress a letter seized by a mail clerk at the pretrial confinement·facility.

On January 12, 1988, Mrs. Zoellers, the acting mail clerk, was inspecting a letter written by appellant. While scanning the letter, she noticed references to the destruction of government property. "What did I destroy? Well I haven't been to court yet so of course I'm innocent 'of course?' Well remember the two story cirmanal [sic] records & courthouse accross [sic] from the M.P. station? It's now a parking lot for cars! Ha! Ha!" She seized the letter and turned it over to postal officials.

Army Regulation 190–47, The U.S. Army Correction System (Oct. 1, 1978) (Change 1, Nov. 1, 1980), controls censorship of mail going into and out of confinement facilities. The regulation provides for inspection of incoming and outgoing mail, but specifically creates a category of privileged correspondence, for example, letters to attorneys, congressmen, chaplains, and so forth. (Para. 5–10*b* (2), (3) and (11).)

Appellant admitted that he had been briefed by a noncommissioned officer on use of mail privileges and that mail was returned to him because it did not pass inspection. Like all prisoners, appellant had completed a form in which he consented to the inspection of his mail.

In *Stroud v. United States*, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919), the Supreme Court upheld seizure of a letter written by Stroud and given to a guard. Instead of mailing the letter, the prison official delivered it to the warden. At trial, the motion to suppress the letter was denied, and the Supreme Court held:

> In this instance the letters were voluntarily written, no threat or coercion was used to obtain them, nor were they seized without process. They came into the possession of the officials of the penitentiary under established practice, reasonably designed to promote the discipline of the institution. Under such circumstances, there was neither testimony required of the accused, nor unreasonable search and seizure, in violation of his constitutional rights.

*Id.* at 21–22, 40 S.Ct. at 52–53.

■ Also in *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the Court permitted reading prison-

er mail and cited approvingly regulations for censorship of mail matter, including contraband, obscenity, and solicitation of gifts. *Martinez* did not overrule *Stroud,* and "[s]ince censorship was held [in *Martinez*] to be justifiable under certain circumstances then, by implication, it appears that the mere reading of prisoner's mail is permissible." *State v. Matthews,* 217 Kan. 654, 538 P.2d 637, 642 (1975).

Thus, we hold that reading the letter was "lawful activity" under the circumstances. Mil.R.Evid. 316(d)(4)(C). *See also* Mil. R.Evid. 313, 314(h), and 316(f).

 Next we turn to the question of the basis for the seizure of the letter. Mil. R.Evid. 316(b) provides that there may be a seizure "when there is a reasonable belief that the ... evidence is ... evidence of crime." Even if there was a lawful inspection, the letter may not be seized unless there was a basis for the seizure. In *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), the Court abolished the rule against seizing "mere evidence" because that rule could lead to indiscriminate seizures. The Court stated that "there must, of course, be a nexus ... between the item to be seized and criminal behavior." *Id.* at 307, 87 S.Ct. at 1649. In upholding seizure of documents not listed in the warrant, the Supreme Court in *Andresen v. Maryland,* 427 U.S. 463, 483, 96 S.Ct. 2737, 2749, 49 L.Ed.2d 627 (1976), stated: "[W]e conclude that the trained special investigators reasonably could have believed that the evidence specifically dealing with another lot in the Potomac Woods subdivision could be used to show petitioner's intent with respect to the Lot 13T transaction." Also in *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), the Court indicated: "The seizure of property in plain view involves no invasion of privacy and *is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.*" *Id.* at 741–42, 103 S.Ct. at 1542–43 (quoting *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980)) (emphasis added in *Brown*). The Court in a footnote indicated it need not decide whether a lower standard might be applied in some cases. *Id.* at 742 n. 7, 103 S.Ct. at 1543 n. 7. The letter of appellant, who was charged with burning down the staff judge advocate's office and courtroom, certainly was evidence of a crime. Thus, we also hold that seizure of the letter was proper.

The decision of the United States Army Court of Military Review is affirmed.

Judge GIERKE concurs.

## APPENDIX

If the defendant does not wish counsel, the following questions should be asked:

(1) Have you ever studied law? What education do you have? Do you understand English?

(2) Have you ever represented yourself or another in a criminal trial?

(3) From the trial counsel's statement of the charges, do you know the charges against you?

(4) Are you familiar with the Military Rules of Evidence?

(5) Do you realize that the Military Rules of Evidence govern what evidence may be introduced and those rules must be followed even though you are representing yourself?

(6) Are you familiar with the Rules for Courts–Martial?

(7) Do you realize those rules govern how this case is tried?

(8) Do you understand that you would be better off with a trained lawyer who would be familiar with the Rules of Evidence and the Rules for Courts–Martial?

(9) Do you realize that representing yourself is not a matter of telling your story? If you testify, you cannot just give a statement. You must ask yourself questions and then give answers, according to the Rules of Evidence and the Rules for Courts–Martial.

(10) Do you understand a lawyer has the experience and training in trial procedure to best advocate your position at trial?

(11) Do you realize that not following the rules of procedure or being familiar with the rules of evidence, you may do something which in effect will have unintended consequences, such as asking a question which might be considered a statement or an admission by you?

(12) Do you understand that proceeding *pro se* will not allow you to complain on appeal about the competence of your own representation?

(13) Do you realize that your case may be presented less effectively because you will be both your own advocate and the defendant?

(14) Do you realize the maximum penalty in this case is _____?

(15) I think it is unwise for you to represent yourself, not being familiar with those rules. I strongly urge you not to try to represent yourself. Knowing all that I have told you, do you still wish to represent yourself?

(16) Is this decision made as a result of any threats or force against you or is it a decision you make of your own free will?

(17) Do you wish to have a counsel sit with you at the counsel table and be available to assist you? I recommend you do so.

*See generally* Guideline For District Judges from 1 Bench Book for United States District Judges § 1.02–2 to –5 (Dec. 1991); earlier version *quoted in United States v. McDowell*, 814 F.2d 245, 251–52 (6th Cir.1987); *see Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); *United States v. Streater*, 32 MJ 337 (CMA 1991).

(TO MJ: You must make a finding as to whether the accused is competent to proceed *pro se* and whether this is a voluntary decision.)

COX, Judge (concurring):

I concur. *United States v. Streater*, 32 MJ 337 (CMA 1991). *See also United States v. Lopez*, 35 MJ 35, 42 (CMA 1992) (Cox, J., concurring); *United States v. Alexander*, 34 MJ 121 (CMA 1992); *United States v. Morris*, 28 MJ 8 (CMA 1989).

SULLIVAN, Chief Judge (concurring in the result):

In view of the principal opinion's reliance on *United States v. Lopez*, 35 MJ 35 (CMA 1992), I must again concur in the result. *See* my separate opinion in *Lopez*. *Id.* at 46.

WISS, Judge (concurring in part and in the result):

I concur in the majority's treatment of Issues I, II, and IV that were granted review by this Court.

As to Issue III, I—like the Court of Military Review—find no need to address the military judge's determination that LTC Haluski lacked authority over the area searched. Instead, I agree with the majority that, as the Court of Military Review and the military judge ruled—the good-faith exception applies to this search.

Lieutenant Colonel Haluski had probable cause to authorize the search; and CPT West, the officer who applied for and executed the search authorization, had an objectively reasonable basis to believe that Haluski had authority over the area in which appellant's car was found. Thus, consistent with the principles I discussed in my separate opinion in *United States v. Lopez*, 35 MJ 35, 49 (CMA 1992), I conclude that West acted in reasonable, good-faith reliance on the lawfulness of Haluski's authorization. *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).