**UNITED STATES**

v.

**Technical Sergeant Donald J. DRESEN, FR396–60–2733, United States Air Force.**

**ACM 29249.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 23 Jan. 1991.

Decided 22 March 1993.

1104

Appellate Counsel for the United States: Captain Carlos L. McDade (argued), Lieutenant Colonel Brenda J. Hollis, and Major Paul H. Blackwell, Jr.

Before O'HAIR, SNYDER, and GRUNICK, Appellate Military Judges.

## OPINION OF THE COURT

SNYDER, Judge:

Is an accused denied his Sixth Amendment right to counsel when the trial judge denies a request for a continuance and informs the accused he must either proceed with duly detailed and individual military counsel or proceed pro se? Under the facts and circumstances of the instant case, we hold he is not.

Contrary to his pleas, appellant was convicted by a general court-martial, which included enlisted members, of willful disobedience of a superior commissioned officer and divers uses of marijuana.[1] He was sentenced to a bad-conduct discharge, confinement for one year, forfeiture of $500 pay per month for 6 months, and reduction to E–1. The convening authority disapproved the findings on the willful disobedience offense, dismissed that charge and specification, and reduced the confinement portion of the sentence to 10 months. The remaining parts of the sentence were approved.

Appellant raises 13 assignments of error. Two have some merit, and we grant appellant partial relief.

## I. SIXTH AMENDMENT RIGHT TO ASSISTANCE OF COUNSEL

Appellant avers the trial judge abused his discretion to appellant's prejudice by denying his request for a delay, thereby forcing appellant to proceed pro se against his wishes. We disagree.

### A. Factual Background

Charges were preferred against appellant on 27 August 1990. Captain W already was appellant's individual military

Appellate Counsel for the Appellant: Captain David D. Jividen (argued), Colonel Jeffrey R. Owens, Major Alice M. Kottmyer, and Major Mary C. Yastishock.

---

1. In violation of Articles 90 and 112a, UCMJ, 10 USC §§ 890 and 912a (1988).

**1106**

counsel for an administrative proceeding.[2] After the Article 32 Investigation, the charges were referred for trial on 20 September 1990 and served on appellant on 25 September 1990. Trial was scheduled for 2 October 1990. Because of Captain W's illness and medical treatment, delays were granted until 30 October 1990. On 26 October 1990, however, appellant retained civilian counsel, and, on 1 November 1990, the trial judge granted civilian counsel's request for delay until 3 December 1990. Between 3 December 1990 and 15 January 1991, additional delays were granted at the request of civilian counsel. Because of his involvement with a capital murder trial, civilian counsel did not meet again with appellant until 18 December 1990, when he reviewed the entire case with appellant and Captain W.

After thoroughly reviewing the case and the trial strategy Captain W proposed to pursue in defense of appellant, civilian counsel opined appellant was in extremely capable hands with Captain W, and civilian counsel could not offer any better representation than Captain W was already providing. Consequently, civilian counsel advised appellant that, in view of Captain W's apparent ability and thorough preparation, he could not, in good conscience, accept appellant's retainer and recommended he proceed solely with Captain W's representation. On 19 December 1990, appellant provided a letter informing all concerned that he had released civilian counsel and was fully satisfied Captain W would adequately represent him.

Trial convened on 15 January 1991. After the trial judge advised appellant of his rights regarding counsel, *see* R.C.M. 901(d)(4), appellant informed the trial judge he had released both his detailed and individual military counsel. This part of the colloquy was as follows:

MJ: Since you are here today with Captains [R] and [W], am I correct in assuming that you wish to proceed to trial represented by them alone?

Acc: No sir, I do not. I wish to release them at this time.

MJ: And do what? Represent yourself?

Acc: Yes, sir. I'd like to submit this to you sir.

MJ: Okay, I'll mark this as Appellate Exhibit I.[3]

Acc: Sir, may I clarify something?

MJ: Sure.

Acc: I do not wish to represent myself. I *request that a civilian attorney be assigned*, and I request a six to eight week delay to prepare. (emphasis added)

\* \* \* \* \* \*

MJ: I have given you three and a half, over three and a half, almost four months to get civilian counsel. You fired a civilian counsel. You tell me you are satisfied with your military lawyer, and then you come in today and you want a civilian counsel. The answer to that is no. Now, do you want a military counsel?

Acc: No sir, I do not at this time.

MJ: Okay, do you want to represent yourself?

Acc: No sir, I do not.

MJ: Well, what are you going to do? What are you going to do, because I have given you delay after delay, to have

2. As a result of a command directed urinalysis which tested positive for marijuana, appellant was the subject of an administrative discharge action. *See* Air Force Regulation (AFR) 39–10, *Administrative Separation of Airmen*, Chap. 5, para. 5–50.1 (Apr 1988). Captain F initially represented appellant on that matter, but appellant released him and requested Captain W. The Secretary of The Air Force denied appellant's request for lengthy service probation and rehabilitation and directed his discharge. Before the execution of his discharge, however, appellant was selected for a base-wide random urinalysis inspection. His sample tested positive for marijuana, resulting in this court-martial.

3. In Appellate Exhibit I appellant sets forth his dissatisfaction with all counsel who had represented him to that point, and specifies his constitutional rights he believed had been violated. He also stated Captain W was the best counsel he had, but was still dissatisfied with him. Appellant's basic complaint was that counsel refused to present his defense in the manner which he desired. Counsel dispute this contention. They viewed his strategy as ill-advised, but denied they refused to present his desired defense.

a civilian counsel present. You fired him, you notified me that you fired him, that you are satisfied with your military counsel, and then you come in here today and tell me that you want a civilian counsel. I'm telling you the answer to that is no. Now, do you want a military counsel?

Acc: No sir, I do not.

\* \* \* \* \* \*

MJ: Sergeant Dresen, what I am going to do is I'm going to have [counsel] remain at counsel's table throughout the trial. Now you are representing yourself, you don't have to consult them if you don't want to, but they are there to provide you legal advice if you feel that you need it. Do you understand that?

Acc: Yes, sir. I request that they not sit at the table though.

MJ: Well, I'll leave them there and you don't have to ask them anything if you don't want, but that's where they are going to be.

Acc: Sir, I don't want to give the jury the impression that I have someone here representing me.

MJ: Well I'm not going to tell them that they are representing you. I am going to tell them that you are representing yourself, and that they are there to provide you legal advice if you request it.[4]

## B. Denial of Continuance and Pro Se

■■ Upon request and for reasonable cause, the military judge is authorized to grant requests by either party for a continuance as often as fairness may dictate. Article 40, UCMJ, 10 U.S.C. § 840 (1988). A request for a continuance is addressed to the sound discretion of the trial judge, and only a clear abuse of that discretion will result in error. *United States v. Thomas*, 22 M.J. 57 (C.M.A.1986); *United States v. Menoken*, 14 M.J. 10 (C.M.A.1982). The discretion granted trial judges in deciding the question of continuances is very broad, and only "a myopic insistence upon expeditiousness in the face of a justifiable need

for delay," which must be determined case-by-case, will constitute an abuse of discretion. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964), *accord Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 1616–17, 75 L.Ed.2d 610 (1983); *Thomas*, 22 M.J. at 59.

■■ Some of the factors weighed in testing for an abuse of discretion are: the number of prior delays granted, the timeliness and stage in the proceedings the continuance was requested, and, if based on dissatisfaction with counsel, the adequacy of the trial court's inquiry into appellant's complaint against counsel. *See United States v. Torres*, 793 F.2d 436 (1st Cir. 1986), *cert. denied*, 479 U.S. 889, 107 S.Ct. 287, 93 L.Ed.2d 262 (1986); *United States v. Stevens*, 27 M.J. 626 (A.F.C.M.R.1988), *aff'd*, 28 M.J. 159 (C.M.A.1989), *cert. denied*, 490 U.S. 1091, 109 S.Ct. 2433, 104 L.Ed.2d 989 (1989). Reviewing and weighing these particular factors, and applying them to the instant case, we find no abuse of discretion.

■■ Although Article 38(b), UCMJ, 10 U.S.C. § 838(b) (1988), guarantees an accused the right to obtain civilian counsel at any point of the trial, it does not guarantee an accused a delay in the progress of the trial for him to do so.

> An accused can always discharge his attorney, but if he desires to substitute another attorney for the one discharged, his right is qualified in "that the request for substitution of counsel cannot impede or unreasonably delay the proceedings."

*United States v. Montoya*, 13 M.J. 268, 274, *quoting United States v. Jordan*, 22 U.S.C.M.A. 164, 166, 46 C.M.R. 164, 166 (1973). This principle reflects the fact that, unlike the Sixth Amendment right to the assistance of counsel, the right to counsel of one's choice is not absolute, and must be balanced against society's interest in the efficient and expeditious administration of justice. *Thomas*, 22 M.J. at 59, and cases

---

4. The trial proceeded with only Captain W present. Because of appellant's criticism of him, the second detailed counsel, Captain R, believed it improper for him to continue. Upon his request, the trial judge excused him from further participation.

cited therein.[5] Further, the Sixth Amendment right to counsel may not be manipulated for purposes of delay or to thwart the ends of justice. *United States v. Flewitt,* 874 F.2d 669 (9th Cir.1989); *McMahon v. Fulcomer,* 821 F.2d 934 (3d Cir.1987).

In the instant case, appellant's request for a continuance the day of trial truly was an eleventh hour request. Granted, the delays due to Captain W's illness and civilian counsel's docket were not his fault, but appellant still had more than ample time between 29 December 1990, when he released civilian counsel, and 15 January 1991 to find another civilian counsel. The record not only supports the conclusion appellant did nothing between 29 December 1990 and 15 January 1991 to obtain civilian counsel, but also that he had no realistic expectation of obtaining another counsel. This fact is demonstrated by appellant's request for the trial judge to *appoint* a civilian counsel,[6] as well as the following exchange:

MJ: Yesterday you told me you needed a delay and made a motion to have civilian counsel provided to you at government expense because you didn't have the money, and then you wanted a delay to hire a civilian counsel, and now you do have the money and want a delay. Let me ask you this. If I gave you a delay to get a civilian counsel, what would you do with that delay? ... How would you have a civilian attorney present your case?

Acc: Basically the same way I am going about it now; command influence. Hopefully I could find an attorney that would take it on a contingency basis, because my intentions are to file a civil suit when this matter is concluded.

Further, the trial judge ascertained appellant's military counsel were fully prepared, there was no evidence of an irreconcilable conflict between appellant and his counsel, and, when appellant informed them he no longer desired their services, counsel were willing to proceed in the manner appellant desired.

When appellant stated he desired a six to eight week delay to "prepare and obtain witnesses," the trial judge walked appellant through the issues he proposed to raise and the witnesses he requested and their desired testimony. This inquiry went to the heart of appellant's request for the additional delay. On the basis of appellant's responses, the trial judge properly ruled the issues and proffered testimony irrelevant to the proceedings.

In view of the prior delays granted appellant, his waiting until the morning of the trial to discharge his fully prepared, military counsel, his unrealistic request for civilian counsel, and his baseless request for additional delay, the trial judge had more than a reasonable basis on which to conclude appellant's request was made solely for purposes of delay.[7]

The record reflects the trial judge was not indifferent to appellant's requests falling within reasonable bounds. When appellant complained of insufficient sleep due to his preparation for the trial's sessions, the trial judge adjourned earlier than normal and started later the next day. Fur-

---

**5.** Appellant argues correctly that a military accused's right to counsel is broader in certain respects than those under the Fifth and Fourteenth Amendments applicable to civilian accused. *See United States v. Gnibus,* 21 M.J. 1 (C.M.A.1985). However, the specific extra breadth exists primarily in the inapplicability of indigency to the military right to counsel and the degree which the attorney-client relationship, once formed, is protected. *Gnibus,* 21 M.J. at 6. Further, the right to named counsel under Article 38(b), UCMJ, 10 U.S.C. § 838(b) (1988) is not absolute, and there is no right to civilian counsel at government expense.

**6.** Appellant asserted that, due to unlawful command influence at Carswell Air Force Base, Tex-

as, he could not trust any military defense counsel to represent him and present the defense he desired to present. Because of Air Force defense counsel's separate chain of command, this premise rapidly collapses under its own weight. *See* AFR 111–1, *Military Justice Guide,* Chap. 18 (Sep 1988).

**7.** At the time of trial, appellant had over 19 years of service. One of the trial judge's essential findings is appellant was seeking delay of his trial to reach 20 years service, when he would be retirement eligible. In an affidavit responding to appellant's claim of ineffective representation, Captain W states appellant informed him and Captain R he was discharging them so he could reach the 20 year point.

ther, after the start of trial, the trial judge continued the proceedings for five days to allow appellant to arrange for witnesses on relevant issues and prepare his presentation. Therefore, the trial judge was reasonably within his discretion in denying appellant the six to eight week continuance. The trial judge's ruling was not an unreasonable insistence on expeditiousness, but was based on the history of the case and the merits of the request. *United States v. Browers*, 20 M.J. 356, 361 (C.M.A. 1985) (Cox, J., concurring); *Stevens*, 27 M.J. at 627.

■ Although appellant informed the trial judge he did not desire to represent himself, his actions inescapably produced that result. After ascertaining whether an accused is seeking to discharge an unprepared counsel, or, for personal reasons, seeking to discharge counsel who is fully prepared, *McMahon v. Fulcomer*, 821 F.2d 934, there comes a point when the court can require an accused to proceed with detailed counsel or proceed pro se. *United States v. Flewitt*, 874 F.2d at 674; *United States v. Moya–Gomez*, 860 F.2d 706 (7th Cir.1988), *cert. denied*, 492 U.S. 908 (1989). Therefore, regardless of appellant's desires and protestations, when, in the face of the trial judge's clear warning that substitute civilian counsel would not be produced at government expense, appellant insisted on discharging his detailed and individual military counsel for insufficient cause, he in fact waived the assistance of those counsel and his action was the functional equivalent of a *knowing and voluntary* choice to proceed pro se. *McQueen v. Blackburn*, 755 F.2d 1174, 1178 (5th Cir.1985), *cert. denied*, 474 U.S. 852, 106 S.Ct. 152, 88 L.Ed.2d 125 (1985). The only question to address with regards to this choice is whether appellant was adequately apprised of the risks to which his choice exposed him.

## C. Adequacy of *Faretta* [8] Advice

■ Prior to allowing an accused to waive representation by counsel and proceed pro se, the trial judge must make the accused aware of the disadvantages of self-representation and find the accused understands the risks and disadvantages of self-representation and that the accused's waiver of counsel is knowing and voluntary. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); R.C.M. 506(d). Appellant argues the trial judge failed to make a particularized finding that he clearly understood the disadvantages of self-representation and that appellant was mentally competent to make the decision. In fact, appellant argues the trial judge was required to make a two-tiered finding of mental competency: that he was competent to stand trial, and he also possessed a higher degree of mental competency required to proceed pro se. We disagree with these assertions.

■ We first address appellant's assertion that the degree of mental competency required for knowingly proceeding pro se is higher than that of basic mental competency to stand trial. This argument is based on *United States v. Freeman*, 28 M.J. 789 (N.M.C.M.R.1989), which appears to hold that competence to merely assist in one's defense with representation of counsel is not sufficient to demonstrate competence to proceed pro se. The Navy Court decided, essentially, that the higher degree of competence is shown by insuring an accused possesses the legal ability to represent him/herself in addition to understanding the risks of self-representation. *Freeman*, 28 M.J. at 792–3, 793 n. 5. We do not read *Faretta*, R.C.M. 506(d), or *United States v. Streater*, 32 M.J. 337, as requiring such a dual standard of competency.

We join our Army brethren in holding R.C.M. 506(d) provides the sole test for determining whether an accused is competent to proceed pro se, and that the standard is not higher than the one required for conducting or assisting in one's defense. *See United States v. Mix*, 32 M.J. 974, 980 (A.C.M.R.1991). We also believe the Court of Military Appeals does not subscribe to a higher degree of competency for a knowing decision to proceed pro se. *See Streater*,

8. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

32 M.J. at 339 n. 3. As did the Army Court, we also view *Freeman* as reflecting a record where there was a reasonable doubt regarding Freeman's mental responsibility, period, let alone his competency to represent himself. *Mix*, 32 M.J. at 980 n. 4.

R.C.M. 506(d) reads as follows:

(d) Waiver. The accused may expressly waive the right to be represented by counsel and may thereafter conduct the defense personally. Such waiver shall be accepted by the military judge only if the military judge finds that the accused is competent to understand the disadvantages of self-representation and that the waiver is voluntary and understanding. The military judge may require that a defense counsel remain present even if the accused waived counsel and conducts the defense personally....

 The trial judge discussed the risks of self-representation with appellant on three occasions.[9] He ascertained appellant's education level, the length of his military service, and he particularized the risks and difficulty appellant could encounter, e.g., inartful examination of witnesses and being held to the same standard as an attorney. Although the trial judge did not particularize the basis for his finding, he did make a finding as to appellant's understanding his choices and making a knowing waiver. His ruling was as follows:

I am going to continue to allow you to represent yourself. I don't think it's a good idea, but you have that constitutional right. Captain [W] will be here to help you if you want. You don't have to ask him for advice if you don't want to. Although I don't think your choice is intelligently made, I think it is knowing and voluntarily made. So I am going to grant your request to represent yourself.

First, we do not view the trial judge's comment on the intelligence of appellant's choice as inconsistent with his findings, but as a comment on the wisdom of appellant's choice. Appellant asserted the need for another mental evaluation, but the trial judge ruled another one was unnecessary. In refusing appellant's request, the trial judge relied on his in-court observations, as well as an earlier mental evaluation finding appellant mentally competent. All of the evidence before the trial judge reflected a diagnosis of chemical dependency, which is not a mental disease or defect.[10] Further, our review of the record also convinces us the trial judge had sufficient information to enter informed findings.

It was error for the trial judge not to particularize the basis for his findings, but it was not prejudicial error. *Streater*, 32 M.J. at 339. Our review of the record convinces us appellant was mentally competent and made a knowing, intelligent choice to proceed pro se. As we held in subpart B, *supra*, when appellant discharged his military counsel, he made a knowing waiver of counsel. In addition to trying to avoid trial, appellant was adamant on how he wanted his case handled and proceeded to do so. Single minded pursuit of an ill-advised strategy does not equate to mental incompetence.

The record demonstrates appellant was aware of and appreciated the risks of self-representation, which is reflected by his persistent request for an alternative delay of five days to prepare, which the trial judge did eventually grant.[11] The record

9. After beginning the *Faretta* inquiry, the trial judge became distracted by appellant's requests for delay and sorting through them. However, it is far preferable for trial judges to remain focused on the issue at hand before resuming or moving on to another. This is the only detraction from an otherwise commendable handling of a case tried under difficult circumstances.

10. The trial judge also allowed appellant to seek another mental evaluation during the trial, ordered trial counsel to assist him in obtaining an appointment, and ordered the examination to be conducted pursuant to R.C.M. 706(c)(3).

There was no evidence forthcoming to indicate appellant was other than chemically dependent on marijuana.

11. Appellant tried to use that very risk to his advantage, as represented by the following:
 Acc: I think there's a question of my psychiatric disposition at this time. For proof of that, I am standing here in a general court-martial defending myself.
 MJ: I agree with you that is not very smart. But that alone does not raise insanity. I've been down this road with you before. I agree your decision to go represented by yourself

also demonstrates appellant pursued a coherent, albeit ill-advised, strategy. He litigated his assertion of command influence, vindictive prosecution based on alleged bias by the office of the staff judge advocate, and reprisal for his filing Inspector General complaints addressing defective showers in the dormitories. He presented evidence of his military character, as well as attacking the credibility of a witness called to corroborate appellant's prior admission.

Most important, however, the record demonstrates compellingly that the trial judge did not abandon appellant. On numerous occasions, out of the presence of the members, the trial judge cautioned appellant he was pursuing a path which would provide evidence of his guilt and he might want to reconsider. Appellant basically thanked the trial judge for his advice and pressed on. We view this as additional evidence of appellant knowingly proceeding with full knowledge of the risks.

### D. Requiring Counsel's Presence At Counsel's Table

 Appellant also claims prejudice from the trial judge's requiring Captain W to remain at counsel's table over appellant's objection. We find no error. The trial judge provided a clear instruction to the court members regarding Captain W's role at the trial. His instruction, and Captain W's presence, in no way infringed on the perception appellant was representing himself. *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). In view of the fact the record reflects appellant consulted Captain W during the trial, we fail to discern any prejudice.

 We find no impropriety in the trial judge asking Captain W how much time and effort he expended preparing to defend appellant. These were questions

Captain W was obliged to answer as an officer of the court.[12] On the other hand, the trial judge did err when he asked Captain W if a particular unit was assigned to his home base, Dyess AFB, Texas, while ruling on the admissibility of a document. Captain W's answer was used to exclude the document from evidence. However, we find no prejudice. The document related to a collateral matter of minor importance. The remaining inquiries by the trial judge were to insure appellant possessed the documentation he claimed he needed to litigate his motions and pursue his defense.

### II. INEFFECTIVE ASSISTANCE OF COUNSEL

 Appellant claims he was prejudiced by deficient performance of his defense counsel both during and after trial. To successfully claim ineffective assistance of counsel, appellant must demonstrate deficient performance or errors by counsel, and also demonstrate that he was prejudiced as a result of the claimed errors. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden is on appellant to demonstrate the errors and the claimed prejudiced. Because of the many decisions which must be made during a trial, the latitude accorded counsel is wide, and tactical decisions will not be second guessed on appeal. *Strickland* at 688–91, 104 S.Ct. at 2065–66. *Lockhart v. Fretwell,* —— U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180 (1992); *United States v. Scott,* 24 M.J. 186 (C.M.A.1987).

### A. At Trial

 Appellant's complaints against Captain W are: misadvice during the administrative separation action, refusal to

---

has not been a smart one, but that's your constitutional right. But that doesn't raise insanity or incompetence to stand trial.

Additional exchanges in the record reflect appellant explaining his assertion of mental incompetence to mean he was unprepared to pursue his motions and defense, not that he was unable to comprehend the proceedings and meaningfully participate.

**12.** This questioning occurred after appellant had called Captain W as a witness on part of his

vindictive prosecution motion. Although the trial judge fully warned appellant he was making Captain W available for cross-examination by doing so, the trial judge excused Captain W from the witness stand without tendering him for cross-examination. We do not believe that was by happenstance, but was done to preclude divulgence of otherwise confidential communications.

request another mental evaluation of appellant in order to pursue the marijuana addiction defense, and failure to adequately prepare for the trial. Appellant claims Captain W advised him to prepare a statement for use in the discharge action which detailed appellant's drug use and for appellant to submit it to the legal office after it was complete. Appellant asserts he followed this advice to his serious detriment, for this statement was the prosecution's main evidence at trial.

Captain W agrees he advised appellant to draft a statement for submission to the Secretary of The Air Force,[13] but he told appellant to first submit it to him for review and editing. Captain W states he had no knowledge appellant had submitted the statement to the legal office until after the legal office phoned and advised him of receiving it. Captain W testified on appellant's motion that he thoroughly investigated the possibility of bias by the office of the staff judge advocate, and concluded there was no bias against appellant. As he stated at trial, Captain W states in his affidavit that he was fully prepared for trial. He states he researched and discussed with appellant the addiction defense, advised against it, and appellant agreed to follow an alternative strategy. Captain W relates that, the morning the trial was to begin, appellant informed him and Captain R appellant was releasing them to delay the trial until he reached 20 years of service. Appellant disputes Captain W's affidavit.

After reviewing the record and the affidavits, we resolve the factual issues against appellant. The record demonstrates Captain W was commendably prepared. The civilian counsel's affidavit is additional evidence of Captain W's preparation. Captain W requested the assistance of Captain R solely with drafting the anticipated motions. Captain W had already performed the research and defined the nature of the motions. Appellant's actions during trial, where he consistently refused to heed

prudent advice and cautions, tend to corroborate Captain W's statement that he advised appellant to first submit his statement to him for review and editing, but appellant disregarded his advice.

We also resolve against appellant his claim that Captain W refused to pursue a mental evaluation and the defense of addiction to marijuana. Attached to Captain W's affidavit is a copy of a chart outlining the advice given to appellant and the strategy and tactics to be pursued at trial. Captain W used the chart as he consulted with appellant in detail concerning his trial and defense. Appellant's initials appear by each issue and right discussed. Consequently, we accept Captain W's assertions that he did not refuse to pursue a defense appellant desired and that appellant concurred with and consented to the strategy to be pursued at trial. It was appellant's conscious choice which led him to pursue his addiction defense pro se, and not deficient performance by Captain W, his individual military counsel.

### B. Post–Trial Representation

 Captain N was detailed to represent appellant during the post-trial stage of his proceedings. Appellant's complaint against Captain N is multipronged: her refusal to personally consult with him at the confinement facility or return his telephone calls, and her refusal to advocate the errors he believed occurred at his trial. Appellant alleges Captain N refused to seek disapproval of his bad-conduct discharge, informing him the convening authority did not have the authority to overturn or disapprove the punitive discharge, and that Captain N refused to assist him with seeking rehabilitation and retention.

Captain N confirms she declined appellant's request to consult with him at the confinement facility. She did not do so because of her busy schedule with other clients and because it was her professional opinion there were no extraordinary circumstances requiring a personal visit. She

---

**13.** Because of the assessed strength of the Government's case, including potential rebuttal evidence, and appellant's 19 years of service, Captain W advised appellant to waive a board hearing and request lengthy service consideration. *See* AFR 39–10, para. 6–35. If granted, this would have placed appellant on probation and allowed him to reach retirement eligibility.

states there was no difficulty reaching appellant by phone, and she did return appellant's calls. Captain N also details other differences with appellant.

Captain N denies telling appellant the convening authority could not disapprove the bad-conduct discharge. She told him she viewed that as unlikely. She also states it was not a matter of her refusing to assist appellant with preparing requests for retention and rehabilitation, but appellant's refusal to accept her advice on all of the matters she raised. Further, after she refused to prepare the presentation the way appellant demanded, which in her view contained inflammatory material harmful to his receiving meaningful relief, appellant refused to discuss alternative plans with her. She also states she advised appellant she would not address every conceivable legal issue, for those issues were already preserved for appeal. She viewed the best strategy to be a request for a rehearing on sentence and seeking meaningful sentence relief. Captain N also states appellant, against her request and advice, submitted matters directly to the convening authority without first allowing her to review them. She also states appellant refused to allow her to see what he had submitted. Captain N opposed seeking a delay solely so appellant could continue to draw E–6 pay as long as possible. However, without her knowledge, appellant requested, and received, a longer delay than she required to complete her submissions on his behalf. Captain N states she advised appellant it was in his best interest to ask for reasonable relief which the convening authority might grant.

As is apparent, Captain N had experiences with appellant similar to those encountered by his trial defense counsel. We resolve the factual differences in her favor. However, that does not dispose of this issue. Captain N submitted a thorough and well reasoned brief on appellant's behalf, wherein she vigorously advocated a rehearing on sentence. Unfortunately, we conclude Captain N committed error via the alternative relief she sought from the convening authority.

As an alternative to a rehearing on sentence, Captain N requested clemency in the form of an *approval of the bad-conduct discharge* and a substantial reduction in the confinement and forfeitures. Of all the possible court-martial punishments, the bad-conduct discharge was the one thing appellant did not desire. Although Captain N probably was entirely correct in viewing it as unlikely the convening authority would disapprove the bad-conduct discharge, it was error under the circumstances of this case to specifically request relief which included the bad-conduct discharge *without appellant's consent.* Captain N's affidavit implies this course was pursued on the basis of professionally assessed reality, as opposed to appellant's consent. It detracted from otherwise excellent advocacy for appellant. This was not a case of urging the convening authority to reduce a dishonorable discharge to a bad-conduct discharge. Only a bad-conduct discharge was in issue, and it concerned a 19–year noncommissioned officer facing loss of any chance at retirement. To pursue this strategy, Captain N should have insured appellant knowingly consented to it.

Although we find error by Captain N, we do not find prejudice to appellant. The specific basis for our finding no error will be detailed in our final disposition. Therefore, appellant has not satisfied the second prong of the *Strickland v. Washington* test.

### III. IMPROPER ADVICE TO CONVENING AUTHORITY

Appellant also avers the staff judge advocate failed to inform the convening authority of the proper standard to apply to the sentence. Specifically, after advising the convening authority to disapprove the findings on Charge I and its specification and dismiss the charge, the staff judge advocate failed to clearly advise the convening authority of the following: that the convening authority must first appropriately reassess the sentence to account for the change in the findings, and then make a separate determination of sen-

tence appropriateness based on the reassessed sentence. Further, appellant avers the convening authority was not made aware that first he must decide whether he could determine the sentence the court would have adjudged solely for the remaining charge. *See United States v. Reed*, 33 M.J. 98 (C.M.A.1991).

Appellant raises this error as an alternative to his argument that only a rehearing on sentence can truly provide him a proper sentence for the sole offense remaining after the dismissal of Charge I and its specification. The basis for this argument is that Charge I was the means by which extremely prejudicial evidence was admissible against appellant, and it is extremely difficult, if not impossible, to determine what sentence the members would have adjudged in its absence. In the alternative, he requests another Recommendation by a staff judge advocate and another action by the convening authority. We partially agree with appellant.

First, we do not agree that the convening authority received incomplete or inaccurate advice on the proper standard he was to apply. Even if the staff judge advocate's original review was unclear, it was crystallized by Captain N's R.C.M. 1106(f) response to the review advocating a rehearing on sentence because the two assessments could not be done reliably, and the staff judge advocate's addendum thereto. We believe the convening authority was clearly aware of the standards to be applied regarding reassessment to cure error and sentence appropriateness. *Cf. United States v. Hill*, 27 M.J. 293 (C.M.A.1988).

Our discomfort is with whether the convening authority could meaningfully determine what sentence would have been adjudged in the absence of the disobedience offense. This is especially so in view of the fact the disobedience offense accounted for two-thirds of the authorized maximum punishment at trial. *See Reed*, 33 M.J. at 99; *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). Further, although the staff judge advocate defined the two functions the convening authority had to perform, he did not state the basis for determining 10 months

confinement would have been adjudged in the absence of the disobedience offense. *Reed*, 33 M.J. at 100. Nonetheless, at this stage of the proceedings, we do not believe a rehearing on sentence will be necessary to correct the situation. We will do so in our final disposition.

## IV. REMAINING ASSIGNMENTS OF ERROR

 It was not plain error to admit appellant's letter to the Secretary of The Air Force. As indicated in Part II, above, we find factually that appellant disregarded the advice of his counsel during the administrative discharge action as well as at other times. He cannot now be heard to complain regarding the consequences. The trial judge properly admitted the letter detailing appellant's drug usage. Mil.R.Evid. 305. The issue regarding fixed terms of trial and appellate judges has been decided adversely to appellant. *United States v. Graf*, 35 M.J. 450 (C.M.A.1992). Any issue regarding trial counsel's argument on sentence is mooted by our disposition. We have considered the remaining assignments of error and find them without merit.

## V. SENTENCE REASSESSMENT

 Because of the unique circumstances of this case, we do not consider it in the best interests of justice to remand for a rehearing on sentence. We are confident our action will provide appellant with a sentence no more severe than he would have received at trial had the disobedience offense not been present or in the event of his acquittal thereof. *United States v. Peoples*, 29 M.J. 426 (1990).

At trial, appellant never wavered regarding his views on his use of marijuana. In fact, his adamant views on marijuana were the source of inevitable tension between him and his counsel. Appellant averred to the court that he used marijuana as a sedative to relax and ease the tension of his marriage to an alcoholic spouse. By time of trial, of course, he no longer was married. His justification to the members was that his use of marijuana did not interfere with the performance of his duties. Applying our experience gained as Air Force officers as well as trial and appellate

judges on similar cases, we are convinced the court members rejected this rationale. Further, we are also convinced they viewed appellant's misconduct as aggravated by the testimony that appellant's clothing smelled of marijuana during duty hours.

Because appellant was convicted of divers uses of marijuana, combined with evidence of use during duty hours and his noncommissioned officer status, we are confident confinement would have been adjudged. The problem is determining how much. However, regardless how much confinement the court members would have adjudged, appellant already has served the confinement. Thus, even if we could accurately determine the lesser amount, assuming it to be lesser, we cannot make appellant whole in that regard. We can, however, adjudge a sentence which does not include confinement or forfeitures, and will fall below the ceiling of the entire sentence we are confident the court members would have adjudged. *Peoples*, 29 M.J. at 428.

Consequently, we believe the only portions of appellant's sentence which are difficult to determine are the exact length of the confinement and forfeitures. Nonetheless, we are confident appellant's sentence would have included, as a minimum, a bad-conduct discharge and reduction. *Peoples*, 29 M.J. at 429; *Sales*, 22 M.J. at 307.

Accordingly, reassessing the sentence on the above basis, we approve only so much of the sentence as provides for a bad-conduct discharge and reduction to E–1. Article 59(a), UCMJ, 10 U.S.C. § 859(a) (1988). The sentence, as reassessed, is fully appropriate. Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1988).

## VI. DECRETAL

The findings and the sentence, as reassessed, are correct in law and fact and are hereby,

AFFIRMED.

Senior Judge O'HAIR and Judge GRUNICK concur.