OPINION OF THE COURT
SPISAK, Judge:
Officer and enlisted members, sitting as a general court-martial, convicted the appellant in absentia of making false statements by signing false official records, larceny of approximately $56,000 from the United States Air Force, presenting false claims totalling $49,000, and several forgeries, in violation of Articles 107, 121, 132, and 123 of the UCMJ, respectively (10 U.S.C. §§ 907, 921, 932, and 923). The court sentenced him to a dishonorable discharge, confinement for 10 years, reduction to the lowest enlisted grade, total forfeitures, and a fine of $56,000.
The appellant raises five assignments of error for our consideration. He argues that the charges of signing false records in violation of Article 107 and filing false claims in violation of Article 132 are multiplicious with one another and with larceny (Article 121); his sentence is inappropriately severe; the military judge abused his discretion by proceeding without the presence of the appellant; the military judge committed prejudicial error during sentencing by allowing the government to introduce an Air Force Form 2098 indicating that the appellant was absent without leave; and, the application of Article 57(a), UCMJ, violates the Ex Post Facto Clause of the Constitution with respect to the appellant. We certified a sixth issue: whether the evidence is factually and legally sufficient to support a finding of guilty of larceny of approximately $56,000, when the appellant was found guilty of presenting false claims totalling only $49,000. We find that Article 57(a) operates as an ex post facto law in the appellant’s case.
FACTS
Between November 14, 1990, and July 26, 1995, the appellant, a master sergeant with 17 years service, submitted 136 vouchers for local area travel. These claims totaled $59,-423.37. During the trial, the government moved to dismiss 11 of the vouchers from the false claims charge which reduced the total number of vouchers to 125 and the total amount claimed to approximately $56,000. Just prior to resting its case, the government moved to amend Charge II, Larceny, to reflect the same $56,000 figure.
The claims which form the basis of the charges were purportedly approved by the appellant’s supervisors and most included several trips between his duty station and Fort Meade, Maryland. However, each of those supervisors testified that either the signature which appeared in the approval box was not his, or that he would not have approved travel to Fort Meade for the appellant, or that there was no legitimate reason for the appellant to make such trips. Only 14 of the 125 suspect local area travel vouchers contained legitimate signatures by the approval authority. Additionally, the claims included fund cites from some 18 different accounts, some of which were for units to which the appellant was never assigned.
MULTIPLICITY
In United States v. Albrecht, 43 M.J. 65 (1995), our senior court explained that when all the elements of one offense are included within the elements of the other, the two are multiplicious. Otherwise, we must assume that Congress intended violations of each article to be separately charged. Whalen v. United States, 445 U.S. 684, 692, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). When two separate statutory provisions are involved, a “separate-elements test” is applied. Offenses are multiplicious if elements of one are included within the elements of the other. United States v. Teters, 37 M.J. 370 (C.M.A.1993).
A. False Claims and False Statements
The appellant argues that making a false statement and presenting a false claim are multiplicious because the false statements were “included offense[s] under the Article 132 [false claims] specification[s].” Prior unpublished opinions from different panels on this court have resulted in opposite *854 conclusions on this very issue. Therefore, we take this opportunity to specifically address the issue in a published opinion in order to establish a firm precedent on which counsel may now rely.
Here, Charges I and III allege different offenses. However, even a cursory review of the charges which were presented to the court reveals an overlap of the factual underpinnings of the offenses. For example, the Specification of Charge I indicates that between November 14, 1990 and June 26, 1995, appellant made false official statements by signing “Standard Form 1164s (Local Area Travel Vouchers)” which he knew contained false information. The Specification of Charge III, alleges that during the same time period, the appellant made false claims by presenting “local area travel vouchers” for approval knowing them to be false. Charge III lists each of the vouchers by number and amount, but Charge I contains no specific information about the vouchers. Moreover, the only evidence presented at trial related to those vouchers listed in Charge III.
The elements of false official statement are that an accused signed an official document, the document was false in some manner, the accused knew it was false at the time of signing, and the document was made with the intent to deceive. Manual for Courts-Martial, United States (MCM), Part IV, If 31b (1995 ed.). The elements of presenting a false claim are that the accused made a claim against the United States, the claim was false or fraudulent in certain particulars, and the accused knew it was false. MCM, Part IV, U 58 c(l)(a) and (b). However, not every false official statement results in a false claim. For example, a military member could make a false statement to the police during a criminal investigation. See United States v. Dorsey, 38 M.J. 244 (C.M.A.1993). Similarly, while the false claim in the instant case resulted from the false statement, not every false claim depends on a false statement having been made. As the Court of Appeals for the Fourth Circuit explained, cashing a check to which one is not entitled is an example of a false claim where no false statement has been made. United States v. Allen, 13 F.3d 105, 108 (4th Cir.1993). See e.g., United States v. Branker, 395 F.2d 881 (2d Cir.1968) (endorsing and cashing a tax refund check to which not entitled is a false claim against the United States); Dimmick v. United States, 116 F. 825 (9th Cir.1902) (making demand on a bill which has been paid constitutes a false claim even though the bill is not a false statement).
This issue is governed by Schmuck v. United States, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and Teters. In Teters, the Court of Military Appeals (now the United States Court of Appeals for the Armed Forces [USCAAF]) set out a three-part analytical framework for applying the Blockbur-ger multiplicity test: 1) Did the specifications arise out of the same act or course of conduct? 2) If so, is there a clear indication whether Congress intended that separate convictions result from the single act or course of conduct? 3) If overt legislative intent is missing, we then ask whether or not each offense requires proof of an additional fact not required to prove the other. United States v. Neblock, 40 M.J. 747, 749 (A.F.C.M.R.1994)
Applying the elements test, we find that, even under the circumstances of this case, making false official statements and presenting false claims are not multiplicious. Both offenses involved the making of statements on official documents which the appellant knew to be false, however, making a false statement requires proof that the speaker, or here the preparer, had the intent to deceive. No such intent element is specified in presenting a false claim. Presenting a false claim, on the other hand, requires more than merely making a statement or signing an official document. This offense requires proof that the claimant gave (“presented”) the claim to “a certain person with the authority to pay a claim against the United States.” There being disparate elements and contingencies of proof, the two offenses are not multiplicious under the Teters analysis. Nevertheless, while charging both offenses withstands legal scrutiny, we do not commend it for emulation, unless done for exigencies of proof.
*855 B. Larceny and False Claims
Next we must determine whether the false claims charge is multiplicious with Charge II, Larceny. Presenting a false claim does not require that any moneys be obtained. Rather, the offense is complete upon placement of the claim in official channels. Whether or not funds are paid out is of no consequence. MCM, Part IV, H 58c(l)(b) (1995 ed.). On the other hand, larceny requires that something be taken, obtained, or withheld with the intent to permanently deprive the rightful owner of its use or value. Id. at 1146b. While the appellant is correct that the obtaining here was accomplished by means of the false claims, we cannot say that every false claim results in larceny or that larceny by false pretenses always includes a false claim.
Applying the Teters test, and the teaching of Albrecht, we conclude that charging the presenting of false claims in violation of Article 132, and larceny in violation of Article 121, survives multiplicity scrutiny, notwithstanding the fact that the money stolen was the same as that for which the claim was filed.
TRIAL IN ABSENTIA
Trial began in this case on March 12,1996, at which time the appellant asked to release his trial defense counsel and have two new counsel assigned to the case. One of the new counsel was in court, but had become aware of the case only the day before. In order to allow the new counsel time to prepare, the military judge granted a delay until April 30, 1996. However, during the March 12 proceedings, the appellant was arraigned, pled not guilty to all charges, and requested trial by enlisted and officer members.
The court reconvened on May 6, 1996, but the appellant was not present. Trial defense counsel requested a delay in order to allow the appellant “some opportunity to reconsider and come back.” The military judge determined that the first available date when all counsel and the military judge would again be available was June 17, 1996. Trial counsel asked to proceed in absentia because witnesses were available for trial, one had already traveled, and because the assistant trial counsel would be transferred and new counsel would have to be assigned if the case were delayed. The military judge delayed the case until the next day to allow the appellant the opportunity to return.
On May 7, 1996, the trial counsel called three "witnesses in an effort to establish that the appellant had voluntarily absented himself from the trial. The first witness, an Air Force Office of Special Investigations agent, testified that the appellant had moved out of his apartment two weeks earlier and was staying with a friend. The friend told the agent that the appellant got up on the morning of May 6th, dressed in his uniform and left for an evidentiary hearing which was to “lay the ground” for a formal court appearance in September. Another friend later told the agent that he had received a call from the appellant at about 6:30 p.m. on May 6th. The appellant told his friend that he had gone to the hearing that morning and had overheard some lawyers talking about pre-trial confinement prior to his being court-martialed in September. The appellant said he became alarmed, excused himself to go to the restroom and never returned. The appellant also told his friend that he wanted to turn himself in to authorities, but didn’t know how. There is no evidence in the record that the appellant was present at all on the morning of May 6, 1996. In fact, during his argument on the defense motion to delay the proceedings, trial counsel noted, “he has made up this story about how he even attended a hearing here yesterday which we all know is not true. He never showed up for [the court-martial on May 6.]” Defense counsel neither objected nor offered any evidence or argument to refute this assertion.
The appellant’s commander, Maj M, testified that he had not given the appellant permission to take either May 6th or 7th off and that the appellant was supposed to be at the court-martial proceedings both days. He also testified that when he learned the appellant did not appear at the court-martial, he made several calls during the day and night to the appellant’s home, called the local hospitals to see if he had been admitted, and tried, without success, to contact the appellant’s family. On May 7,1996, Maj M placed *856 the appellant in absent without leave (AWOL) status. Finally, Maj. M testified that in August of 1995, the appellant had taken forty over-the-counter sleeping pills and Tylenol in what the doctors identified as a suicide gesture. The appellant was hospitalized in the psychiatric ward for about a week following that gesture.
The final witness called was the appellant’s immediate supervisor who testified that he had not given the appellant permission to take time off on either May 6th or 7th. He also testified that he believed the appellant would be at work on May 6 because the appellant had not told him otherwise. The prior week the appellant had been absent from work on numerous occasions to meet with his attorneys, but said nothing about missing work on May 6th or 7th. Nor had he told his supervisor that his court-martial was scheduled to begin on May 6.
The trial counsel also presented an affidavit from another supervisor who also attested that he had not given the appellant time off for either May 6th or 7th. Trial defense counsel presented no contrary evidence, but argued that there was inadequate evidence to determine that the appellant had voluntarily absented himself from the hearing or that he had the mental capacity to absent himself. These same arguments are raised before us by appellate defense counsel.
Trial and appellate defense counsel contend that the August 1995 suicide gesture, along with the appellant’s “really outlandish” statements to his friends, indicated that he was not thinking straight and cast doubt on his mental competence. They note that the Discussion of Rule for Courts-Martial 804 (R.C.M.), MCM, states that when “there is some evidence that an accused who is absent from a hearing or trial may lack mental capacity to stand trial, capacity to voluntarily waive the right to be present for trial must be shown.”
Granting a continuance is within the discretion of the military judge, and a denial will be reversed only for an abuse of discretion. United States v. Sharp, 38 M.J. 33 (1993). See, e.g., United States v. Thomas, 22 M.J. 57, 59 (C.M.A.1986). Whether a military judge has exercised his discretion in a judicially tempered manner is determined by the nature of the competing interests or rights and how the military judge balanced those competing facets of the case in question at the time the continuance was requested. United States v. Grant, 38 M.J. 684, 689 (A.F.C.M.R.1993).
The military judge made findings of fact in which he determined that the accused had voluntarily absented himself; that he was aware of the date of the trial because, although the specific date may not have been clear, the earlier proceedings had notified him that trial would continue and the appellant told other people that he was aware that there was a hearing on May 6th. The military judge also noted that “[i]n the absence of any showing of lack of competence on the accused’s part, I infer that the accused is competent, notwithstanding the stress associated with being an accused.”
An accused may effectively waive his right to be present at trial by voluntarily absenting himself from the proceedings. Crosby v. United States, 506 U.S. 255, 258-9, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993); Taylor v. United States, 414 U.S. 17,19-20, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973); United States v. Johnson, 7 M.J. 396, 397 (C.M.A.1979); United States v. Houghtaling, 8 C.M.R. 30, 1953 WL 1615 (1953). However, even if there is evidence that the accused is voluntarily absent, if there is also evidence that the appellant was not mentally competent at the time of his absence, the trial should be delayed. R.C.M. 804; United States v. Cook, 43 C.M.R. 344, 1971 WL 12792 (1971). Here, the only possible evidence of a lack of competence was the fact that the accused made a suicidal gesture, not an attempt, more than 8 months before the trial. Even his trial defense counsel admitted that there was no finding or report of mental incompetence as a result of that gesture.
An accused’s voluntary absence after commencement of trial serves as a waiver of his constitutional right to be present at subsequent stages. United States v. Bass, 40 M.J. 220, 223 (C.M.A.1994). Nevertheless, both trial and appellate defense counsel argued that a one day absence is too short a *857 time to justify proceeding in absentia. However, they have not presented, and we have not found, any case law which establishes any witching hour before which the military judge may not proceed. The military judge in this case was sensitive to the shortness of the absence as evident from his delaying the proceedings until the second day of the appellant’s absence. We decline to establish any brightline rule for how long is long enough to justify proceeding without the accused. Rather, we leave that determination to the discretion of the military judge with the reminder to consider the number of prior delays granted, the timeliness and stage in the proceedings at which the continuance is requested, and the completeness of the military judges inquiry into the reasons for the requested continuance. Grant, 38 M.J. at 689; United States v. Dresen, 36 M.J. 1103, 1107 (A.F.C.M.R.1993), vacated on other grounds, 40 M.J. 462 (C.M.A.1994). On these facts, we agree with the findings by the military judge and reject the appellant’s assignment of error.
ADMISSIBILITY OF EVIDENCE
The appellant argues that the military judge committed prejudicial error by permitting the trial counsel to present a copy of the AF Form 2098 which placed the appellant in AWOL status on May 7, 1996. He argues that the evidence should only have come in as evidence of rehabilitation potential and that the military judge should have given a limiting instruction advising the members only to use the evidence for that very limited purpose. Although the trial counsel offered the AF Form 2098 under R.C.M 1001(b)(5) {Evidence of rehabilitative potential), the military judge rejected that basis and admitted it as part of the appellant’s personnel records under R.C.M 1001(b)(2).
We review the military judge’s ruling on admissibility of evidence for abuse of discretion. United States v. Johnson, 46 M.J. 8, 10 (1997). We will not overturn his decision absent a clear abuse of that discretion. United States v. Redmond, 21 M.J. 319, 326 (C.M.A.1986).
The military judge’s ruling in the case before us comports with then Chief Judge Everett’s majority opinion in United States v. Wingart, 27 M.J. 128, 136-37 (C.M.A.1988), which came three years after United States v. Chapman, 20 M.J. 717 (N.M.C.M.R.1985), aff'd, 23 M.J. 226 (C.M.A.1986). Wingart serves as controlling precedent with regard to the government’s introduction of uncharged misconduct during sentencing. However, two of our sister courts have found that evidence of absence without leave during the pendency of one’s own court-martial is admissible during sentencing as evidence of rehabilitation potential, or lack thereof, even though the absence constitutes uncharged misconduct. United States v. Denney, 28 M.J. 521 (A.C.M.R.1989); Chapman.
In Denney, our Army brethren determined that even though the decision in Chapman predated our senior court’s holding in Win-gart, the affirmance of Chapman indicates that it “retains its vitality because it is distinguishable from and thus unaffected by Win-gart.” Denney, 28 M.J. at 524. Our Army brethren concluded that Wingart’s clear rule against the use of extrinsic evidence to prove lack of rehabilitation potential, did not apply in cases of absence from one’s own court-martial. Quoting the Navy-Marine Corps Court of Military Review from Chapman, the Army Court agreed that such an absence “is a unique form of uncharged misconduct” which is “not specifically excluded from consideration by Rule 1001 and is highly relevant to rehabilitative potential, particularly demonstrating lack of remorse and unreliability.” Chapman, 20 M.J. at 718.
Even if our sister courts are correct, however, the case before us is distinguishable from both Denney and Chapman, because documentary evidence of the absence without leave in those cases was admitted as a requisite to the trial continuing. In the case before us, only testimonial evidence was admitted to aid the military judge in determining whether or not the appellant’s absence from the trial was voluntary. None of this testimony was presented to the members. Rather, they were merely advised by the military judge during his initial instructions on their duties and again during findings instructions that they could not draw any adverse inferences from the appellant’s ab *858 sence from trial. The actual AF Form 2098 was not offered until sentencing. The document’s admissibility was, therefore, controlled entirely by R.C.M 1001, Presentenc-ing procedure.
R.C.M. 1001(b)(5) authorizes the trial counsel to present evidence of the accused’s rehabilitation potential “by testimony or oral deposition ... in the form of opinions concerning the accused’s previous performance as a service member and potential for rehabilitation.” As then Chief Judge Everett pointed out, witnesses who have offered opinions on rehabilitation may be cross-examined on specific instances of misconduct, but extrinsic evidence may not be used to show the presence or absence of such potential. Win-gart, 27 M.J. at 136. While evidence that the accused failed to attend his own trial because he was AWOL may provide evidence of lack of rehabilitation potential, an AF Form 2098 does not include opinion testimony as outlined in R.C.M. 1001(b)(5). Had the defense called witnesses to offer opinions on the appellant’s rehabilitation potential, the trial counsel could have cross-examined them on the appellant’s absence. When they did not, there was no basis under R.C.M. 1001(b)(5) to admit the document.
The trial counsel may also present evidence from the accused’s personnel records which relates to his “character of service.” R.C.M. 1001(b)(2). As the court noted in Wingart, a service member’s personnel record often provides evidence which would not be available even to an experienced probation officer preparing a presentencing report for a civilian court. The AF Form 2098, is just such a piece of evidence. If the records are properly maintained, such documentary evidence may be admitted.
However, even when evidence is found in the member’s personnel record, the defense counsel may object to inaccurate, incomplete records, or those containing “matter that is not admissible under the Military Rules of Evidence.” R.C.M. 1001(b)(2). In the case before us, trial defense counsel objected that the evidence was prejudicial and under the balancing test required by Mil.R.Evid. 403, should not be admitted.
We are satisfied that the military judge did not err in permitting the court members to consider the AF Form 2098. First, we find that the evidence was relevant because it reflected on appellant’s military character, which is precisely the purpose behind R.C.M 1001(b)(2) which states:
trial counsel may obtain and introduce from the personnel records of the accused evidence of the accused’s ... character of prior service. Such evidence includes copies of reports reflecting the past military efficiency, conduct, performance, and history of the accused____
Second, the fact that the appellant was not present in the courtroom during the trial was already well known to the members. Presentation of this evidence merely clarified for the members why he was absent and prevented them from speculating and reaching inaccurate conclusions. Applying the balancing test, we find the probative value of the AF Form 2098 was not substantially outweighed by the danger of unfair prejudice to appellant.
Finally, we note that the military judge properly instructed the members to use the appellant’s absence in “assessing his military record.” Moreover, we find that the military judge properly instructed the members both that they could not draw any adverse inferences from the accused’s absence[1] and that they could punish him only for the crimes of which he was convicted, not his absence.[2] *859 Therefore, we conclude that the military judge did not abuse his discretion by admitting the AF Form 2098 as a part of the appellant’s personnel records under R.C.M. 1001(b)(2).
While it is nowhere stated in the Rules for Court-Martial or in any ease law we have discovered, we find it is abundantly clear that the purpose of assessing an accused’s military record is to determine whether or not he should be retained. In other words, to determine his potential for rehabilitation. When the military judge instructed the members as he did, he invited them to do exactly what the appellate defense counsel now argue he failed to do, instruct the members to consider the absence in evaluating the appellant’s rehabilitation potential. Therefore, we find that the military judge neither abused his discretion by admitting the AF Form 2098, nor by failing to give an instruction limiting its use to rehabilitation potential.
FACTUAL SUFFICIENCY
On its face, the court’s finding that the appellant stole over $56,000 (Charge II) does not appear to comport with its finding that he falsely claimed only $49,000 (Charge III). In finding the appellant guilty of the false claims charge, they excepted 14 vouchers out of the charge. If, therefore, the larceny is based solely on the filing of false claims, it would appear that the larceny should also be limited to $49,000 rather than the $56,000 theft of which the members found the appellant guilty. We are satisfied by our review of the record, however, that the evidence adequately supports the larceny charge and the court’s findings.
The 14 vouchers which were excepted out of the false claims guilty finding were not a part of the forgery charge because those signatures were not forged. However, the language of the false claims charge also required a finding that the “approving officials’ names were forged.” This language made it impossible for the members to find the appellant guilty of false claims of the 14 vouchers which did not contain forged signatures. That does not, however, mean that there was inadequate evidence to support a finding of guilty of larceny of an amount greater than the amount of the false claims.
Although the primary evidence presented at trial related to the false claims and forgery, there was also evidence that the appellant received payment for the various claims, including the 14 excepted out of the false claims specification, and that he had not offered to repay the over payment.
Each of the supervisors whose valid signatures appeared on the 14 vouchers which were excepted out of the false claims charge testified that either he would not have approved travel to Ft Meade, Maryland, or that there was no legitimate official reason for the appellant to make such trips. Additionally, the trips to Ft Meade appeared as the last entry on each of the 14 vouchers now in question. Thus, while at first blush it appears that the only basis for Charge II, Larceny, was the false claims, there was sufficient evidence on which the members could find that while the 14 vouchers did not contain forged signatures, they did contain false information by which the appellant obtained funds to which he was not entitled. In other words, that he stole the unauthorized portions of the proceeds from each of the 14 vouchers now in question.
However, each of the questionable vouchers does contain some legitimate travel for which the appellant was entitled to payment. The remaining question then is whether or not the amount of money stolen was “approximately $56,000.” We find that it was. The 14 vouchers total about $7,400.00 of which about $620.00 represented valid claims. Therefore, even if the members subtracted out the $620.00, they could still have found that the appellant took “approximately $56,-000” because the actual total would have been something near $55,400.
Article 66(c), UCMJ, requires that we approve only those findings of guilty which we find correct in law and fact. Having reviewed the entire record, we are convinced beyond a reasonable doubt that the appellant stole approximately $56,000.00 from the United States.
*860 SENTENCE APPROPRIATENESS
Sentence appropriateness involves a consideration of both the individual accused and the nature and seriousness of the offense. United States v. Snelling, 14 M.J. 267, 268 (C.M.A.1982). Moreover, Article 66(c), UCMJ, in addition to mandating that we be satisfied of the legal and factual sufficiency of the findings, also requires that we approve only so much of the sentence as we find “should be approved.”
While the appellant had a commendable military record prior to his court-martial, the evidence presented at trial convinced the members that, for a period of 4 1/2 years, he had forged signatures, had filed false claims totalling about $49,000, and had stolen about $56,000 from his employer, the United States Air Force. That 4 1/2 years represented more than a quarter of his military service. We are satisfied that the appellant’s approved sentence to a dishonorable discharge, confinement for 10 years, reduction to the lowest enlisted grade and forfeiture of all pay and allowances, and a fine of $56,000 is appropriate.
While a fine should not normally be imposed against a military member unless the member was unjustly enriched by his crime, R.C.M. 1003(b)(3), Discussion, that is exactly what happened here. ’ As a result of his false claims and larceny, the appellant received approximately $56,000 to which he was never entitled. Based on our conclusion that the evidence supports the finding of guilty of larceny of approximately $56,000, we find that the fine in this case is neither excessive nor otherwise inappropriate.
EX POST FACTO LAWS
Appellant’s ex post facto arguments were resolved by the United States Court of Appeals for the Armed Forces in United States v. Gorski, 47 M.J. 370 (1997). Accordingly, collection of adjudged forfeitures or execution of a reduction in rank prior to the date of the convening authority’s action pursuant to Article 57(a), UCMJ, are declared to be without legal effect.
CONCLUSION
Any forfeitures already collected from appellant in accordance with Article 57(a), UCMJ, will be restored at the appropriate pay grade. The record of trial is returned to The Judge Advocate General for appropriate action. The case need not be returned to this Court following administrative correction unless further appellate review is required.
We conclude that the findings and the sentence are correct in law and fact, the sentence is appropriate, and no error prejudicial to appellant’s substantial rights has occurred. Accordingly, the findings of guilty and the sentence are
AFFIRMED.
Chief Judge ROTHENBURG and Judge SENANDER concur.

. During voir dire, the military judge instructed the members that "no inference adverse to the accused or the prosecution should be drawn from the accused's non-presence at trial." Later, during instructions on findings, the judge repeated this admonishment saying, “You will not draw any inference adverse to the accused from the fact that he was not present and did not testify. Those facts are neutral facts, having no bearing upon your determination of guilty or not guilty."

. In his sentencing instructions the military judge stated, "You can consider the accused’s current absence in assessing his military record, but remember that, if he is to be punished for that absence [AWOL], it will be in a different forum at another date. The function of this court is to punish the accused for the offenses of which he has been found guilty by this court.”